SOUTHWEST MARINE, INC., a California corporation, on behalf of Universal Painting & Sandblasting Corp., a California corporation, Plaintiffs,

v.

UNITED STATES of America, and United States Department of the Navy, Defendants.

No. C–87–4192 RFP.

United States District Court, N.D. California.

Jan. 9, 1988.

---

**3.** The court acknowledges the assistance of Carl Blumenstein and Carrie Masarik in the prepara- tion of this opinion.

 

Robert C. Nicholas, Haas & Najarian, San Francisco, for plaintiffs.

Rand R. Pixa, Torts Branch, Civ. Div., U.S. Dept. of Justice, San Francisco, for defendants.

## INTRODUCTION

PECKHAM, Chief Judge.

This case involves a contractual dispute arising out of the overhaul of the U.S.S. Mount Vernon. The nominal plaintiff, Southwest Marine, Inc. (SWM), was awarded the general contract for overhauling the U.S.S. Mount Vernon. SWM subsequently entered into a subcontract with Universal Painting and Sandblasting Corporation (UPS), the real party in interest in this case. UPS was to perform various sandblasting and painting jobs on the U.S.S. Mount Vernon.

During the overhaul, numerous disputes arose. Both SWM and UPS accused the Navy, *inter alia*, of having misrepresented the condition of the U.S.S. Mount Vernon when it solicited bids. Under the terms of the Contract Disputes Act of 1978, 41 U.S. C. §§ 601–13 (1982), SWM presented thirteen of its own claims as well as the claim of its subcontractor, UPS, to the officer in charge of administering the contract ("the contracting officer"). The contracting officer denied each of the claims, in whole or in part. On December 9, 1986, SWM appealed the denial of its thirteen claims to the Armed Services Board of Contract Appeals (the Board). SWM filed this district court action on behalf of UPS on August 12, 1987. The defendant now moves to transfer this case to the Board so that it may be consolidated with the other appeals currently pending before the Board.

## DISCUSSION

The Contract Disputes Act of 1978 was adopted to establish "a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving Government contract claims." S.Rep. No. 1118, 95th Cong., 2d Sess. 1, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5235. The Act "applies to any express or

implied contract ... entered into by an executive agency for ... the procurement of services [or the] alteration, repair or maintenance of real property." 41 U.S.C. § 602(a). Thus the Act clearly applies to the present dispute. Under the Act, an aggrieved contractor must first present its claims to the contracting officer. If the contracting officer denies a claim, the contractor can elect to appeal the officer's decision either directly to court, *see* 41 U.S.C. § 609, or to the appropriate agency board of contract appeals. *See* 41 U.S.C. §§ 606–07. The determinations of these boards are subject to judicial review. *See* 41 U.S.C. § 607(g).

 Direct challenges to the contracting officer's decisions generally must be made in the Claims Court. Appeals from board determinations generally lie in the Court of Appeals for the Federal Circuit. Direct appeals from officer's decisions and appeals from the boards are treated differently, however, when they arise from maritime contracts. The Act preserves the traditional jurisdiction of the district courts, sitting in admiralty, to hear appeals such as the one involved in the present case. *See* 41 U.S.C. § 603. Indeed, the jurisdiction of the district courts over maritime contract claims is exclusive vis-a-vis the Claims Court. *See Whitey's Welding & Fabrication, Inc. v. United States,* 5 Cl.Ct. 284 (1984).[1]

The government's motion raises two distinct questions. First, does 41 U.S.C. § 609(d) give this court the power to transfer this case to the Armed Services Board of Contract Appeals? Second, if so, should this court exercise that power given the circumstances of this case? These questions will be analyzed in turn.

### 1) Power to Transfer

 The question of whether a district court, sitting in admiralty, may invoke 41 U.S.C. § 609(d) to transfer a case appears to be one of first impression. In order to determine the scope of section 609(d), we must of course start with the language of the statute itself:

> If two or more suits arising from one contract are filed in the United States Claims Court and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Claims Court may order the consolidation of such suits in that court or transfer any suit to or among the agency boards involved.

41 U.S.C. § 609(d).

The plaintiff argues, correctly, that the plain language of the Act confers transfer power on the Claims Court alone. Because the statute does not mention the district courts, the plaintiff concludes that this court does not have the power to transfer its case to the Board. The government responds that the plaintiff's reading of the statute is overly literal. In the government's view, the structure of the Act as a whole makes it plain that Congress meant for the district courts to have transfer power under section 609(d).

In order to analyze the government's argument, it is necessary to consider the Act's legislative history. As was discussed in *Whitey's Welding,* 5 Cl.Ct. at 286–87, the original Senate version of the Act would have eliminated the traditional admiralty jurisdiction of the district courts over maritime contract claims. *See id.* at 286 (citing S. 3178, 95th Cong., 2d Sess. § 3 (1978)). All direct appeals from the decisions of contracting officers, including those involving maritime contract claims, would have been heard by the Claims Court. Similarly, all appeals from the agency boards would have been heard by the Court of Appeals for the Federal Circuit.

During hearings on the Senate bill, testimony by representatives of the Depart-

---

**1.** The district courts share this jurisdiction with the agency boards. In cases involving maritime contracts, the contractor can elect to appeal an adverse decision of a contracting officer either to the agency board or to the district courts. Board decisions concerning maritime contract claims are subject to limited judicial review in the district courts. *See* 41 U.S.C. § 603. In this case, SWM elected to pursue its claims before the Board, while it has brought UPS's claim in this forum.

ment of Justice "convinced the committees that the current sole jurisdiction over all admiralty cases should remain in the district courts where great expertise has been developed over the years on such cases." The committees therefore deleted the provisions giving the Court of Claims jurisdiction over maritime contracts.

*Id.* at 286 (quoting S.Rep. No. 1118, 95th Cong., 2d Sess. 8, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5235, 5242). The bill was later amended by the insertion of 41 U.S.C. § 603 [2] in order to make it absolutely clear that the district courts retained their jurisdiction over maritime contracts.

When the Senate reinstated the district courts' admiralty jurisdiction, it did not make conforming changes to that part of the bill which eventually became 41 U.S.C. § 609. *See* 124 Cong.Rec. 36,267–68 (1978); *cf. id.* at 37,076 (remarks of Representative Kindness) (urging the House to acquiesce in the Senate amendments, despite their questionable workmanship, because of the impending end of the legislative session). Section 609, which specifies the procedures for the direct appeal of the decisions of contracting officers, on its face applies only to "the United States Claims Court," not to "the United States Claims Court and the district courts in cases involving maritime contracts under section 603." [3] There is no indication in the legislative history that the failure to include the district courts within the terms of section 609 was intentional. The government therefore argues that section 609(d) should be read as if it stated that "either the United States Claims

Court, or the district courts sitting in admiralty" may transfer suits to the boards.

The government's position has considerable merit. The Act preserves the Admiralty jurisdiction of the district courts only "to the extent that [it is] not inconsistent with" the remaining provisions of the Act. 41 U.S.C. § 603. Thus before they can elect to bring maritime claims in the district courts, contractors must comply with the procedural requirements of the Act, e.g., by presenting their claims to the contracting officer. *See River & Offshore Services Co. v. United States,* 651 F.Supp. 276, 281 (E.D.La.1987) (holding that section 603, "rather than completely excluding maritime contracts from the CDA, simply vests appeals from the administrative determinations of claims in the district courts").

The question, then, is whether section 609(d) is one of those procedural provision of the Act which is equally applicable in the district courts and the Claims Court. There is no cogent reason, discernable from the structure of the Act or its legislative history, why Congress would have desired to grant transfer power to the Claims Court alone. We do not agree with plaintiff's contention that a transfer power would be inconsistent with the stated desire of Congress to preserve the admiralty jurisdiction of the district courts. Congress meant only to prevent the Claims Court from assuming jurisdiction over maritime contract claims. It clearly did not intend to prevent agency boards from hearing such claims. *See* 41 U.S.C. § 603 (giving the district courts the power to review board determinations of maritime contract claims). A *discretionary* power in the district courts to transfer cases in no way

---

**2.** "Appeals under paragraph (g) of section 607 of this title and suits under section 609 of this title, arising out of maritime contracts, shall be governed by chapter 20 or 22 of Title 46 as applicable, to the extent that those chapters are not inconsistent with this chapter." 41 U.S.C. § 603.

**3.** The government points out that section 609(a) of the Act, which gives contractors a right to appeal the decisions of contracting officers directly to court, also speaks only of the Claims Court. For the plaintiffs to bring their appeal in this court, however, this provision *must* be

read to include implicitly the district courts sitting in admiralty. This fact offers support for construing the identical language in section 609(d) as applying to the district courts. The power of the government's argument is somewhat diminished, however, by the fact that section 603 contains a reference to "suits [in the district courts] under section 609 of this title." This explicit reference mandates the conclusion that section 609(a) actions may be brought in the district courts in appropriate circumstances. The Act contains no similar acknowledgment of a transfer power in the district courts.

derogates from the admiralty jurisdiction of the district courts. Rather, such power enables the district courts to prevent inefficient and piecemeal appeals to different fora of disputes arising under a single contract. The purpose of the Act—i.e., the orderly resolution of government contract disputes—will be more readily accomplished if the district courts have the same power to transfer and to consolidate cases as does the Claims Court. For these reasons, section 609(d) should be read as applying to the district courts in cases arising under the Act.

### 2) Appropriateness of a Transfer

■ Having determined that this court has the power to invoke section 609(d), the next question we must face is whether a transfer to the board is called for in this case. Section 609(d) leaves this decision squarely within the discretion of the trial court. The statute allows transfers if they are convenient for the parties or witnesses or otherwise "in the interest of justice." 41 U.S.C. § 609(d).

In determining whether consolidation is appropriate, we must be mindful that Congress has admonished the courts to "be sensitive to the reasons why the suits have been split" and not to "consolidate only for the sake of consolidation." S.Rep. No. 1118, 95th Cong., 2d Sess. 31, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5265. We are also mindful of the substantial amount of Claims Court jurisprudence relating to section 609(d) consolidations, and of the Claims Court's unabashed willingness to transfer cases to the agency boards. *See generally*, McGrath, *The Transfer and Consolidation Provision of the Contract Disputes Act*, 15 Pub.Cont. L.J. 256 (1985) (summarizing cases); *see id.* at 269 n. 52 ("With one exception, every case the court has considered under CDA § 10(d) has been transferred to the agency boards; further, the court never has consolidated a case pending in a board with a case before the court.").

The Claims Court has identified a number of factors relevant to consolidation de-cisions. Consolidation is appropriate when there are:

(1) disputes concerning the same contract, (2) overlapping or the same issues in both forums, (3) election by the plaintiff to initiate proceedings at the agency board, (4) substantial effort expended by one forum, but not by the other, and (5) duplication of efforts by the forum and the parties.

*Multi-Roof Systems Co. v. United States,* 5 Cl.Ct. 245, 248 (1984) (citations omitted).

All five of these factors appear to be present in this case. It is undisputed that the claims pending before the Board arise out of the same contract as those pending here. Thus the only statutory prerequisite for exercising the transfer power is satisfied. There is also substantial overlap among the claims. Both SWM and UPS claim that the government misrepresented the condition of the U.S.S. Mount Vernon. SWM and UPS allege that during the overhaul the ship was discovered to be in significantly worse condition than had previously been thought. This discovery necessitated numerous changes in and expansions of overhaul tasks. The lion's share of SWM's claims before the Board relates to unanticipated overtime expenses associated with the numerous change orders. In order to determine the merit of these claims, the Board will have to consider the project as a whole. Specifically, the Board will have to determine the cause for UPS's delay in completing the sandblasting projects and what impact, if any, those delays had on SWM's ability to complete the overall project. Finally, the Board must also determine whether the change order process, which was frequently utilized by the parties during the course of the overhaul, was intended to be a complete settlement of the parties' on-going dispute and a release from liability over all claims. Given the extent of overlap between the SWM and UPS claims, the interest of justice would best be served by transferring this case to the Board.

The other three factors, although not as important, are also present in this case. SWM did elect to take its other claims to

 

the Board. Substantial discovery has already taken place with respect to those claims, much of which would have to be duplicated in this action. The claims before the Board are set for final hearing on the merits in March of 1988. There would be substantial duplication of effort if UPS's claim were subsequently tried in this forum.

The plaintiff presses two major arguments against consolidation. First, plaintiff argues that the subcontractor, UPS, is the real party in interest in this action whereas SWM is the real party in interest in front of the Board. Because the Board case and this case do not involve the same real parties, the plaintiff asserts that section 609(d) cannot be applied. *See* Plaintiff's Opposition at 20. Even leaving aside the fact that SWM *is* involved in this case,[4] plaintiff's argument is not compelling. Section 609(d) requires only that claims arise from the same contract in order for them to be consolidated; it nowhere states that the same real parties in interest must be involved in the two disputes. Although it may seem unfair to allow a general contractor's forum choice to bind its subcontractor, it is the Act itself that requires the claims of all subcontractors to be brought by the general contractor. *See* 41 U.S.C. § 601(4) (defining "contractor" to be a party to a contract with the government); *id.* §§ 606, 609 (conferring a right to appeal on "contractors" only); *Santa Fe Engineers, Inc. v. United States*, 677 F.2d 876, 879 (Ct.Cl.1982) (rejecting the argument that "since the suggested real party in interest, a subcontractor of plaintiff [the general contractor], did not elect a forum, the plaintiff's election is not binding.").

The plaintiff also argues that consolidation would not be economical because the Board's hearing will be held in Washington D.C. and most of the witnesses reside in California. There is some merit to this argument. The purported economy of non-consolidation may prove false, however, if those witnesses will be called in front of the Board anyway. In any event, the need to provide a single forum to resolve all of these related claims in a consistent manner outweighs the witnesses' interest in having a local forum.

## CONCLUSION

The interest of justice would best be served by a transfer of this case to the Board. Accordingly, the defendant's motion is granted. The Clerk of the Court is hereby directed to transfer this case to the Armed Services Board of Contract Appeals.

IT IS SO ORDERED.

---

**4.** At the very least, SWM is the nominal plaintiff. The parties dispute whether SWM has a

direct financial stake in the outcome of this case.