SOUTHWEST MARINE, INC., a California corporation, on Behalf of UNIVERSAL PAINTING & SANDBLASTING CORP., a California corporation, Plaintiff,

v.

UNITED STATES of America, and United States Department of the Navy, Defendants.

No. C–87–4192 RFP.

United States District Court, N.D. California.

Feb. 23, 1988.

Robert C. Nicholas, Haas & Najarian, San Francisco, Cal., for plaintiff.

Rand R. Pixa, Torts Branch, Civ. Div., U.S. Dept. of Justice, San Francisco, Cal., for defendants.

## ORDER DENYING MOTION FOR RECONSIDERATION

PECKHAM, Chief Judge.

### INTRODUCTION

On January 8, 1988, this court entered an order transferring this case to the Armed Services Board of Contract Appeals ("the Board"). 680 F.Supp. 1400. The plaintiff has filed a motion for reconsideration on the ground that the Board would not have jurisdiction over this claim. The motion is denied.

### BACKGROUND

As the court stated in its previous ruling:

This case involves a contractual dispute arising out of the overhaul of the U.S.S. Mount Vernon. The nominal plaintiff, Southwest Marine, Inc. (SWM), was awarded the general contract for overhauling the U.S.S. Mount Vernon. SWM subsequently entered into a subcontract with Universal Painting and Sandblasting Corporation (UPS), the real party in interest in this case. UPS was to perform various sandblasting and painting jobs on the U.S.S. Mount Vernon.

During the overhaul, numerous disputes arose. Both SWM and UPS accused the Navy, *inter alia*, of having misrepresented the condition of the U.S.S. Mount Vernon when it solicited bids.

See Order Transferring Case to A.S.B.C.A. at 1–2 (Jan. 8, 1988). Under the terms of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13 (1982), SWM presented thirteen of its own claims to the officer in charge of administering the contract ("the contracting officer"). The contracting officer denied each of the claims, in whole or in part. On December 9, 1986, SWM appealed the denial of its thirteen claims to the Board. SWM had also submitted a claim on behalf of UPS to the contracting officer. That claim, which is the subject of this suit, was denied by the contracting officer on May 6, 1987. SWM received notice of the contracting officer's decision on May 11, 1987. *See* Declaration of Donald Hey, Exhibit K. SWM filed this district court action on behalf of UPS on August 12, 1987.

### DISCUSSION

In cases involving maritime contract claims, contractors can elect to appeal adverse decisions of contracting officers either to the district courts or to the agency boards. Appeals to the district courts must be made within twelve months of the date the contractor receives the officer's final decision. *See* 41 U.S.C. § 609(a)(3). Direct appeals to the agency boards must be made within ninety days of that date. *See* 41 U.S.C. § 606. As the final decision was received by SWM on May 11, 1987, the period for filing a direct appeal with the Board expired on August 9, 1987.[1] This action was filed three days later.

The parties agree that the Board can not exercise jurisdiction over a direct appeal filed after the ninety day period. *See Cosmic Construction Co. v. United States*, 697 F.2d 1389 (Fed.Cir.1982). The plaintiff argues that the Board likewise should be unable to exercise jurisdiction over a case transferred to it unless the case was filed in court within the ninety day period. The plaintiff therefore believes that it would be futile to transfer the case to the Board.

---

1. The plaintiff calculates the ninety day period from May 6, 1987, the date on which the final decision was issued. The statute, however, specifies that the contractor shall have ninety days from "the receipt of a contracting officer's decision" to file an appeal with an agency board. *See* 41 U.S.C. § 606. Regardless of which calculation is made, this case was filed outside of the ninety day period. Thus the different calculation is not material to the outcome of this motion.

The government responds that the Board has derivative jurisdiction to hear the claim because the district court case undeniably was filed in a timely manner.

The parties have pointed to no court or agency board decision that directly decides the question of whether an agency board can accept jurisdiction over a case filed in court more than ninety days after the receipt of a final decision. The Armed Services Board of Contract Appeals has previously reserved the question. *See Holly Corporation*, ASBCA No. 24975, 80–2 BCA ¶ 14,675 at n. 3 (1980). On one occasion, the General Services Board of Contract Appeals did seem to recognize the principle of derivative jurisdiction in dicta:

> Having failed to appeal here within 90 days, the safest course is for appellant to make an appeal to the United States Claims Court within one year of the contracting officer's assessment decision and then to seek consolidation of the timely appeal to this Board concerning the termination for default with the timely appeal at the Claims Court of the excess cost assessment. The court would then decide whether to consolidate these matters here or at the Claims Court. 41 U.S.C. § 609(d) (1982). The decision rests with the Claims Court.

*Rainey's Security Agency, Inc.*, GSBCA No. 7685, 86–1 BCA ¶ 18,717 (1986).

The decision now rests with this court.[2] The question, though one of first impression, is not difficult. According to the Contract Disputes Act, as interpreted in our previous ruling, this court may "transfer *any* suits to or among the agency boards involved." 41 U.S.C. § 609(d) (emphasis added). Section 609(d) does not require that a suit be filed in court within ninety days in order to be transferable. Similarly,

the ninety day requirement of section 606 on its face applies only to direct appeals of contracting officer's decisions. There is no indication that section 606 is meant to apply to claims transferred from the courts. Thus the result urged by the government is more faithful to the statutory language.

Moreover, the government's interpretation is more in tune with the purpose and legislative history of the statute. As the government notes, the legislative history of section 609(d) states that "[i]t is the intent of the committees that splitting of the causes of action, or suits, under one contract be kept to a minimum both within Court of Claims and within the boards," and that "[i]t is the intent of the section to make available the opportunity to consolidate like suits in one jurisdiction [if appropriate after weighing the positions of the parties involved]." S.Rep. No. 1118, 95th Cong., 2nd Sess. 31, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5265.

On the other hand, the plaintiff's position seems at odds with the purposes of section 609(d). If it were adopted, contractors would have the ability sharply to curtail the transfer and consolidation powers of the courts. Contractors could prevent related claims from being heard by the agency boards simply by appealing certain claims to the boards during the ninety day period, and then waiting until the ninety-first day to file their remaining claims in court. Courts would still have the option of transferring cases *from* the boards. However, the option of transferring cases *to* the boards,[3] which clearly is contemplated by section 609(d), could be effectively negated by contractors.

According to the plaintiff, the government's interpretation of the statute would

**2.** In its administrative docketing notice, the Board reserved "its right to determine the limits of its jurisdictional authority." *See* Declaration of Robert Nicholas, Exhibit A. This opinion should resolve the issue in front of the Board, as any appeal from the Board in this case lies in this Court. *See* 41 U.S.C. § 603.

**3.** These two options will not always be equally desirable, as is illustrated by the facts of this case. Substantial discovery has taken place with respect to the claims that are before the

Board, while this case is at a very preliminary stage. Therefore, while a transfer *to* the Board is in the interests of justice, a transfer *from* the Board is not. If the Act was read as plaintiff urges, this court would be forced to make the unpleasant choice of either allowing the piece-meal litigation of related claims or disrupting the proceedings in front of the Board, which are nearing their culmination. Nothing in the Act limits the court to these options alone.

also encourage forum shopping. A contractor who had failed to take a direct appeal to a board within ninety days could instead appeal to court within twelve months, and then seek a transfer to the board. By this device, the ninety day limit could be circumvented. We are not persuaded that this threat is a serious one. The opportunity to employ this tactic will only arise when the contractor has made a timely appeal of a related claim to the board. More importantly, the decision to transfer a case to a board under section 609(d) is discretionary. If it appears that a case was filed in court in order to circumvent the ninety day limit, the court can simply deny the motion to transfer. *See Glenn v. United States,* 13 Cl.Ct. 784, 786 (1987) ("When there has been a failure to appeal the final decision within the 90–day deadline, it would distort the appeal procedure to permit the failure to be cured by an appeal to this court *for the express purpose of a transfer to the agency board.*") (emphasis added).

The plaintiff's final contention is that it is no longer in the interest of justice to transfer this case. The March 22, 1988 trial date for the liability phase of SWM's trial before the Board, which was ten weeks away at the time of this court's prior order, is now only four weeks distant. The Board has taken no action with respect to this case in the interim, pending the outcome of this motion. Thus UPS may be unable to participate in the March 22 trial. Nevertheless, transfer is still appropriate. The Board may choose to postpone the March 22nd trial date to allow UPS to participate in a consolidated trial on the issue of liability. Even if it does not, there will still be significant advantages to transferring the case to a forum which is already engaged in an extensive inquiry into the overhaul of the U.S.S. Mount Vernon. Damages issues can be resolved jointly. Duplicative discovery should be substantially reduced. More importantly, a single finder of fact will be much more likely to arrive at a consistent resolution of the various claims. These advantages can be achieved regardless of whether the liability claims are tried contemporaneously or sequentially.

## CONCLUSION

The Board has jurisdiction to hear the plaintiff's claim, and a transfer of the case to the Board is in the interest of justice. Accordingly, the plaintiff's motion for reconsideration is denied.

IT IS SO ORDERED.