SOUTHWEST MARINE, INC., on Behalf of UNIVERSAL PAINTING AND SANDBLASTING CORP., Plaintiff–Appellant,

v.

UNITED STATES of America and the United States Department of Navy, Defendants–Appellees.

No. 93–15165.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1994.

Decided Dec. 12, 1994.

Daniel B. Hoye, Haas & Najarian, San Francisco, CA, for plaintiff-appellant.

Steve Frank, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.

Before: LEAVY and KLEINFELD, Circuit Judges, and VAN SICKLE, District Judge.*

VAN SICKLE, District Judge.

Universal Painting and Sandblasting Corporation ("UPS"), through its general contractor Southwest Marine, Inc. ("SWM")[1] seeks review of the District Court decision dismissing UPS's application for attorneys' fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504 ("EAJA"). The court below found that the EAJA does not waive sovereign immunity as to a subcontractor who successfully sues the United States through the sponsorship of a general contractor. For the reasons that follow, this panel AFFIRMS the order of dismissal.

---

* Honorable Fred Van Sickle, United States District Judge for the Eastern District of Washington, sitting by designation.

1. In the interest of brevity, this court adopts the lower court's reference to "UPS" instead of the longer, more accurate, reference to "UPS through the sponsorship of SWM."

## I. BACKGROUND FACTS

In May 1985, SWM contracted with the United States Department of the Navy to refurbish the U.S.S. Mt. Vernon. SWM entered into a fixed-price subcontract with UPS, for sandblasting and painting of the vessel's saltwater ballast and other tanks, as required under SWM's contract with the Navy. The agreed price for the subcontract was $996,695.

UPS encountered significant labor and material cost overruns, due to unusual and unanticipated deterioration in the tanks. Upon completion of the project, UPS sought an equitable adjustment to the contract price, consistent with procedures under the Contract Disputes Act, 41 U.S.C. § 601 et seq. ("CDA").

As a subcontractor, not in privity with the government, UPS presented notice of intent to file a CDA claim to its general contractor SWM. SWM in turn filed UPS's claim with the Navy Contracting Officer, who denied it on May 7, 1986.

UPS appealed the Officer's decision directly to the District Court for the Northern District of California, as allowed by the CDA, §§ 609(a) & 603. The court granted a motion to transfer the claim to the Armed Services Board of Contract Appeals ("ASBCA") under 609(d), for the purpose of consolidating it with thirteen other appeals by SWM then pending, 680 F.Supp. 1400. Though the appeals were never consolidated, on January 16, 1991, ASBCA entered a decision in favor of UPS. UPS eventually recovered over $600,000 in damages from the Navy, though not in time to prevent Chapter 7 bankruptcy.

On June 21, 1991, UPS petitioned ASBCA for an award of attorneys' fees and costs under the EAJA. The board denied the petition, based upon its decision in *Teton Construction Co.*, ASBCA Nos. 27700, 28968, 87–2 BCA ¶ 19,766, which held that a contractor who prosecutes a claim on behalf of a subcontractor cannot recover under the EAJA, if the contractor itself does not meet the EAJA eligibility criteria.

UPS appealed the board decision to the District Court, based on CDA §§ 607(g) & 603. In its complaint, UPS alleged: "SWM is the prevailing party and is eligible to receive an award of attorney's fees and other expenses on behalf of UPS, the real party in interest, under 5 U.S.C. § 504." The District Court granted the government's motion to dismiss, finding that UPS was not a "party" within the meaning of the EAJA, and thus the United States had not waived its sovereign immunity as to UPS. UPS filed notice of appeal to this court on January 25, 1993.

## II. DISCUSSION

■ UPS assigns error to the District Court's interpretation of the two principal statutes at issue. Thus, review is *de novo*. See *Oregon Environmental Council v. Kunzman*, 817 F.2d 484, 496 (9th Cir.1987).

### A. *The Equal Access to Justice Act*

The EAJA provides a limited waiver of sovereign immunity for recovery of costs and fees by small businesses against the United States, in both administrative and court proceedings. 5 U.S.C. § 504 (administrative); 28 U.S.C. § 2412 (judicial). UPS initially sought fees under the administrative EAJA, which states:

> an agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by the party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1).[2]

The Act further provides that " 'party' means a party, as defined in section 551(3) of this title", who incurs costs and meets certain

---

**2.** This language may be reduced to three criteria for EAJA eligibility:
(1) the applicant must be a "prevailing party";
(2) the applicant must have "incurred" costs of litigation against the government; and (3) the applicant must be a small business, meeting size and net worth restrictions. The applicant for fees bears the burden of establishing eligibility. *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991).

size and net worth eligibility criteria. 5 U.S.C. § 504(b)(1)(B). The referenced section of the Administrative Procedures Act, 5 U.S.C. § 551, in turn defines party as follows:

'party' includes a person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party in an agency proceeding, and a person or agency admitted by an agency as a party for limited purposes.

5 U.S.C. § 551(3).[3] There is no question in this case that UPS incurred fees, and also meets the size and net worth criteria to qualify as a "small business" under the EAJA. The issue is whether UPS was ever a "party" to the ASBCA action.

The government maintains that UPS is not a party for purposes of the EAJA, because it was not named in the proceedings, and indeed **could not have been,** in light of the limited waiver of sovereign immunity under the CDA. Thus, in the government's view, SWM, the named party, is the only potential applicant for an EAJA award. SWM does not meet the size and net worth restrictions of the EAJA to be considered a "small business" eligible for fees.

Decisions of the ASBCA support the government's view. In *Teton Construction Co.,* ASBCA Nos. 27700, 28968, 87–2 BCA ¶ 19,766, the board addressed a factual situation identical to the instant case. Rejecting an application for fees by a non-party subcontractor, the board noted that "permitting the subcontractor ... to proceed under the EAJA would improperly expand the waiver of sovereign immunity in the Act." *Id.* at 100,017. *Teton* emphasized that a subcontractor could not be a party against the

government, since "it is a hornbook rule that, under ordinary government prime contracts, subcontractors do not have standing to sue the government." *Id.* at 100,016. The board also noted that the United States had not waived its immunity to pay fees to an otherwise ineligible contractor, bringing a CDA claim on behalf of its subcontractor.[4] *Id.; accord Sentry Insurance Co.,* VABCA No. 2617E, 93–3 BCA ¶ 26,124 (citing both *Teton* and *Southwest Marine Inc.,* ASBCA No. 36287, 93–1 BCA ¶ 25,255).

UPS suggests that the rationale in *Teton* is inconsistent with judicial application of the "real party in interest doctrine" to claims under the EAJA. *See Unification Church v. I.N.S.,* 762 F.2d 1077 (D.C.Cir.1985); *Love v. Reilly,* 924 F.2d 1492 (9th Cir.1991); *Wall Industries, Inc. v. United States,* 15 Cl.Ct. 796 (1988), *aff'd,* 883 F.2d 1027 (Fed.Cir. 1989); *S.E.C. v. Comserv,* 908 F.2d 1407 (8th Cir.1990). While the cases lend some credence to UPS's position that it, and not SWM, was the interested entity before the ASBCA, they do not support an expansive reading of the EAJA definition of "party."

In the leading case of *Unification Church,* the District of Columbia Circuit Court held that individual church members who successfully resisted deportation were not entitled to an EAJA award, since the church, and not the individuals, was the interested party that actually "incurred" all legal costs.[5] 762 F.2d at 1092. Both the individuals and the church were named parties in the action, however, and the court's decision focused narrowly on the statutory requirement that a party "incur" costs to be eligible for an award. Thus, both the facts and the statutory language at

---

3. The EAJA under Title 28 does not expressly define "party" with reference to the Administrative Procedures Act. However, the legislative history to § 2412 reflects Congress's intent that the same definition apply in both codifications of the EAJA. H.R.Rep. No. 99–120, 99th Cong. 1st Sess. 4, at 15 (1985).

4. UPS suggests that *Teton* is "completely at odds" with the ASBCA decision in *T.H. Taylor,* ASBCA No. 26494, 86–3 BCA ¶ 19,257. (Appellant's brief at 9). In *T.H. Taylor,* the board awarded EAJA fees to an eligible contractor which had sponsored a CDA claim on behalf of an eligible subcontractor. The key distinction

between *T.H. Taylor* and *Teton* is that the party contractor in the former case was eligible for an EAJA award, while the party in the latter case, as here, was not.

5. The holding of *Unification Church* is now reflected in the Model Rules of the Administrative Conference of the United States, for implementation of the EAJA in agency proceedings. 1 C.F.R. § 315.101 *et seq.* Specifically, § 315.104(g) states: "an applicant that participates in a proceeding primarily on behalf of one or more other persons or entities that would be ineligible is not itself eligible for an award."

issue distinguish *Unification Church* from the present case.

This Court acknowledged the real party in interest test of *Unification Church* in the case of *Love v. Reilly,* 924 F.2d at 1494. In *Love,* the government sought to impose on an association seeking EAJA fees the burden of showing eligibility of each association member. *Id.* The court noted that the EAJA did not impose such a burden, since the association itself was the party that incurred the full cost of litigation, and it met the size and net worth criteria of the EAJA. *Id. Love* provides little guidance in this case, where the entity that incurred the cost of litigation, UPS, was not a party at all.

*Wall Industries* is the only case relied upon by UPS to address the real party in interest test with respect to a nonparty. 15 Cl.Ct. 796. In that case, a business sued the IRS on behalf of the accounting firm to which it had assigned the right to any recovery. The firm incurred all costs and controlled the litigation, but was neither named nor admitted as a party. The Claims Court held that the business applying for EAJA fees had not "incurred" costs for purposes of the EAJA. Furthermore, the accounting firm which had incurred costs did not meet the size and net worth limits of the statute. Thus, **"assuming without deciding"** that fees could be awarded based on the firm's status as a "real party in interest", the court concluded that the firm was not eligible at any rate. *Id.* at 803.

*Wall Industries* does not provide judicial support for taking the step that UPS advocates. The Claims Court simply assumed for the sake of argument, that a non-party is an interested party when it pays for and controls litigation. It did not address the critical question of statutory interpretation which faced the court below: does an interested entity which is neither named nor admitted in an action meet the statutory definition of "party" under the EAJA? At least one court considering that question has suggested that an entity cannot be a "real party in interest" unless it is first a "party." *S.E.C. v. Comserv,* 908 F.2d at 1416.

■ There is a certain appeal in UPS's argument that awarding fees to small subcontractors who prevail in CDA suits would vindicate the beneficial purposes of the EAJA. The language of the statute, however, only allows fees to a prevailing "party." This language must be strictly construed in order to avoid an unintended expansion of the waiver of sovereign immunity. *See Library of Congress v. Shaw,* 478 U.S. 310, 321, 106 S.Ct. 2957, 2965, 92 L.Ed.2d 250 (1986).

## B. *The Contract Disputes Act*

■ The CDA provides an avenue for redress in disputes involving "any express or implied contract ... entered into by an executive agency for ... the procurement of services [or the] alteration, repair or maintenance of real property." 41 U.S.C. § 602(a). To proceed under the CDA, an aggrieved contractor must first present its claim to the agency Contracting Officer. § 605(a).

If the Officer denies the claim, the CDA establishes two paths of review: appeal to the governing agency board of contract appeals, or alternatively, suit before the Federal Court of Claims. §§ 606, 607(d), & 609(a)(1). Contract board decisions are further appealable to the Federal Circuit Court of Appeals. § 607(g)(1)(A).

The menu of options for appeal of a Contracting Officer's decision is slightly broader when maritime contracts are involved. The CDA preserves the traditional jurisdiction of the district courts in maritime contract claims, by providing:

> Appeals under paragraph (g) of section 607 of this title and suits under section 609 of this title, arising out of maritime contracts, shall be governed by [the Suits in Admiralty Act] or [the Public Vessels Act] as applicable, to the extent that those chapters are not inconsistent with this chapter.[6]

41 U.S.C. § 603. This provision does not alter the requirement that contract claims be presented to a Contracting Officer in the first instance. Rather, it directs jurisdiction for CDA appeals away from the Claims

---

**6.** The admiralty statutes references in this section establish subject matter jurisdiction over maritime claims in the district courts. 46 U.S.C. §§ 742 & 782.

Court and the Federal Circuit Court of Appeals, in favor of the historic admiralty jurisdiction of the federal district courts. The court below, in its order transferring UPS's claim to ASBCA, noted that section 603 is based on a legislative preference for the district courts "great expertise [that] has developed over the years on such cases." (SWM brief, Ex. A, Order at 5).

UPS argues that the District Court wrongly interpreted the maritime provisions of the CDA. In UPS's view, the court should have awarded EAJA fees under maritime law, even though the lack of privity between UPS and the Navy precluded such an award under the CDA.

UPS's argument reflects a misunderstanding of the interplay between the admiralty statutes and the CDA. In the context of an appeal from an ASBCA decision, maritime jurisdiction under the Suits in Admiralty Act and the Public Vessels Act serves only to place appellate jurisdiction in the district courts. 41 U.S.C. §§ 603 & 607(g). It does not transform a contract claim under the CDA into an admiralty claim. *See Jo–Mar Corp. v. United States,* 15 Cl.Ct. 602 (1988). Indeed, the CDA incorporates maritime jurisdiction "only to the extent [it is] not inconsistent with this chapter." 41 U.S.C. § 603.

UPS's reliance on *Marine Coatings of Alabama, Inc. v. United States,* 932 F.2d 1370 (11th Cir.1991) is misplaced. That case involved a subcontractor's claim under the Maritime Lien Act, with subject matter jurisdiction based on the Suits in Admiralty Act and the Public Vessels Act. Holding the CDA inapplicable to such a suit, the Eleventh Circuit cautioned: "[Plaintiff] would be precluded from bringing suit for recovery on the **contract** unless it complied with the CDA." 932 F.2d at 1377. In this case, UPS did not file a lien. Rather, it brought suit before ASBCA for recovery on the contract.

Clearly, while not all claims involving maritime contracts are perforce CDA claims, plaintiffs who seek recovery in contract under the CDA must comply with its provisions. *See Bethlehem Steel Corp. v. Avondale Shipyards, Inc.,* 951 F.2d 92 (5th Cir. 1992) (holding that admiralty jurisdiction does not exempt plaintiff in maritime contract suit from the exhaustion of remedies requirement of the CDA). By focusing on admiralty law, UPS loses sight of the fact that its claim for fees rests solely on its status as a "prevailing party" in an administrative action **under the CDA.** 5 U.S.C. § 504. The lower court did not address an admiralty basis for awarding fees because UPS has not prevailed in any admiralty action.

**AFFIRMED.**