JANICKI LOGGING CO.,
Plaintiff–Appellant,

v.

Bruce MATEER;  Dale Robertson,
Defendants–Appellees.

No. 93–35871.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1994.

Decided Dec. 13, 1994.

William Lenihan, Schwabe, Williamson, Ferguson & Burdell, Seattle, WA, for plaintiff-appellant.

Robert M. Loeb, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.

Before: BEEZER and FERNANDEZ, Circuit Judges, and ORRICK, District Judge.[*]

FERNANDEZ, Circuit Judge:

Janicki Logging Company, Inc. appeals from the district court's dismissal of its action against two officials of the United States Forest Service, Bruce Mateer and Dale Robertson. Janicki sued them in their individual, not official, capacities. It claimed that its constitutional rights were violated when a portion of its logging contract with the USFS was cancelled after the discovery of a Northern Spotted Owl's nest in the affected area. Janicki also claims that the district court erred when it failed to allow an amendment of the complaint and a transfer of the case to the United States Court of Federal Claims.[1] We affirm.

## BACKGROUND

In March of 1986, Janicki entered into a contract with USFS. Under the contract USFS agreed to sell and Janicki agreed to cut and remove 4,100,000 board feet of timber from 129 acres located in the Mt. Baker–Snoqualmie National Forest in the State of Washington. The specified acreage was divided into four units.

Section C6.25 of the contract expressly permitted the USFS to "either cancel" or "unilaterally modify [the] contract" in order to provide additional protection for animals that were listed either as threatened or endangered under the Endangered Species Act, or as sensitive by the Regional Forester. The contract was expressly made subject to the Contract Disputes Act (CDA). 41 U.S.C. §§ 601–613.

In May of 1986, a State of Washington wildlife biologist discovered a Northern Spot-ted Owl's nest in "Unit 1" of the acreage subject to the contract. After that sighting, the USFS contracting officer, Bruce Mateer, notified Janicki that the USFS was unilaterally modifying the contract pursuant to § C6.25 by deleting Unit 1 from the relevant acreage. Janicki claims that virtually all of the high quality old growth Douglas Fir was in that unit. It contested the decision. It claimed that the unilateral modification was in fact a partial cancellation and that only the Chief of the USFS had authority to cancel a contract for environmental reasons. However, in January of 1991 Janicki received a letter from the Chief of the USFS in which he adopted the contracting officer's actions. That letter was not actually signed by the Chief, F. Dale Robertson. Rather, it was signed on his behalf.

Janicki then followed the terms of the contract and the CDA by filing a claim for damages with Mateer. Janicki asked for $381,014.15 in damages, but when Mateer issued his decision on January 8, 1991, he indicated that the total damages for cancellation of Unit 1 would be $128,273.63. Janicki was then informed that, pursuant to the CDA, it had a right to seek review either by filing an appeal with the Agriculture Board of Contract Appeals within 90 days, or by bringing an action directly in the Claims Court within twelve months of the decision. Janicki did neither.[2]

On November 18, 1991, Janicki filed this action in the district court against Mateer and Robertson. It claimed that they had violated its substantive due process rights when they cancelled Unit 1. On January 21, 1992, Janicki finally filed a separate action against the United States in the Claims Court. It claimed that the contracting officer's actions constituted a breach of contract, a taking of property, and a denial of substan-

[*] Hon. William H. Orrick, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Throughout much of the relevant time that court was known as the "United States Claims Court." Effective October 29, 1992, the United States Claims Court was renamed the United States Court of Federal Claims. See Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902, 106 Stat. 4506, 4516 (1992).

For the sake of clarity, we will refer to the court as the "Claims Court" in the remainder of this opinion.

2. On November 4, 1991, Janicki submitted a "revised claim" to Mateer asking for $830,346.05 in damages. Mateer responded that he had already issued a "final decision" on Janicki's claim, and Janicki had been informed of the appropriate appeal procedures.

tive due process. It sought the same damages that it had already sought in its action against Mateer and Robertson.

On November 23, 1992, the Claims Court dismissed Janicki's complaint because the action was not filed within one year of the contracting officer's final decision, the Claims Court lost jurisdiction when Janicki filed its district court action, and the Claims Court did not have jurisdiction to grant relief based upon the due process clause of the Fifth Amendment. The Court of Appeals for the Federal Circuit ultimately summarily affirmed the Claims Court decision based upon the second ground.

In June of 1993, the district court determined that it did not have jurisdiction, as a result of which it dismissed the action without prejudice. It determined that because the CDA is a comprehensive remedial scheme, Janicki could not sustain a *Bivens*[3] action against the USFS officials. The court also pointed out that it had no jurisdiction over CDA actions as such. *See* 28 U.S.C. § 1346(a)(2).

After the district court issued its judgment, Janicki sought reconsideration. It requested that the district court allow it to amend its complaint and that the court then transfer the amended complaint to the Claims Court. *See* 28 U.S.C. § 1631. The district court denied the motion, and this appeal ensued.

## STANDARD OF REVIEW

We review de novo a decision to dismiss a complaint for lack of jurisdiction. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 554 (9th Cir.1992); *Hooker v. United States Dep't of Health & Human Servs.*, 858 F.2d 525, 529 (9th Cir.1988).

We review a denial of a motion to amend a complaint for an abuse of discretion. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 804 (9th Cir.1987). Similarly, we review de-

cisions involving pretrial scheduling orders issued pursuant to Federal Rule of Civil Procedure 16 for an abuse of discretion. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992). We also review a district court's refusal to transfer a case pursuant to 28 U.S.C. § 1631 for an abuse of discretion. *See Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir.1990).

## JURISDICTION

The district court determined that because the CDA created a comprehensive remedial scheme for breaches of contract by the federal government, it did not have subject matter jurisdiction over the *Bivens* action. While we agree with the accuracy of the premise, we cannot agree with the particular conclusion.

■ It is clear that district courts do have jurisdiction over *Bivens* actions. Those actions are brought against employees of the federal government in their individual capacities and are brought to redress violations of citizens' constitutional rights. *See Bivens*, 403 U.S. at 395–96, 91 S.Ct. at 2004–05. They are firmly within the subject matter jurisdiction of the district courts.[4]

■ It is true that Janicki cannot state a cause of action in this case, but that inability did not deprive the district court of jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) ("Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."); *Mace v. Skinner*, 34 F.3d 854, 859–60, 860 n. 6 (9th Cir.1994) (although plaintiff's *Bivens*-type complaint may be subject to dismissal, the district court did have subject matter jurisdiction to hear the claim).

Although we determine that the district court incorrectly indicated that it lacked jurisdiction, that does not compel a reversal. Rather, as we have already intimated, it is

3. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

4. Although a properly pleaded *Bivens* complaint establishes initial subject-matter jurisdiction, it must be otherwise jurisdictionally proper. A de-

fendant, of course, is still free to move pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss the complaint for lack of subject-matter jurisdiction, or pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

apparent that the district court's reasoning that the CDA precluded Janicki from stating a *Bivens* cause of action was correct. Given that, we may affirm the judgment. *See Haddock v. Board of Dental Examiners,* 777 F.2d 462, 464 n. 4 (9th Cir.1985) (the district court properly dismissed plaintiff's Title VII claims even though the court erroneously characterized its ruling as a dismissal for lack of jurisdiction rather than as a dismissal for failure to state a claim); *Black v. Payne,* 591 F.2d 83, 86 n. 1 (9th Cir.) (dismissal was proper where the district court addressed the merits of the plaintiff's claim, even though the court denominated the dismissal as one for lack of subject matter jurisdiction rather than for failure to state a claim), *cert. denied,* 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979). Of course, there is nothing unusual about this approach. It is simply another iteration of our long-standing rule that we may affirm " 'on any basis fairly supported by the record.' " *City of Las Vegas v. Clark County,* 755 F.2d 697, 701 (9th Cir.1985) (citation omitted).

## DISCUSSION

Our consideration of the merits of Janicki's appeal must proceed in two steps. The first is a consideration of the effect of the CDA upon the *Bivens* claim; the second is consideration of the district court's refusal to allow amendment and transfer of the action.

### A. *CDA v. Bivens.*

■ When the Supreme Court first determined that a damage action could be brought against federal employees who violated constitutional rights, it recognized that there might well be cases where another remedy would suffice. Thus, in answer to an assertion that there was no need for a money damage remedy in that case, the Court said:

> [W]e cannot accept respondents' formulation of the question as whether the availability of money damages is necessary to enforce the Fourth Amendment. For we have here no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages

from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress.

*Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005.

Since then, the Court has returned to that theme and has declared that a *Bivens* action will not lie when Congress has created "comprehensive procedural and substantive provisions giving meaningful remedies against the United States...." *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983); *see also Schweiker v. Chilicky,* 487 U.S. 412, 414, 108 S.Ct. 2460, 2463, 101 L.Ed.2d 370 (1988) (persons who were wrongfully denied social security disability benefits as a result of alleged unconstitutional conduct of federal officials were precluded from bringing a *Bivens* action because Congress had devised an "elaborate remedial scheme"). Moreover, the fact that the courts could create a more complete remedy for the asserted wrong does not mean that they should, for "Congress is in a better position to decide whether or not the public interest would be served by creating it." *Bush,* 462 U.S. at 390, 103 S.Ct. at 2417; *see also Chilicky,* 487 U.S. at 424–25, 108 S.Ct. at 2468–69. We have, of course, followed the Supreme Court's lead and have summed up the law as follows:

> The Supreme Court has made clear the propriety of according great deference to Congress in devising remedial schemes.... When Congress has created a statutory remedy for potential harms, the courts must refrain from implying non-statutory causes of actions such as *Bivens.* In obeying the Court's directive to show deference to Congress, we [have] held ... that if there is *some* statutory mechanism for remedying harm ... non-statutory claims are barred.

*Berry v. Hollander,* 925 F.2d 311, 316 (9th Cir.1991); *see also Saul v. United States,* 928 F.2d 829, 840 (9th Cir.1991).

The CDA provides precisely the kind of mechanism that the Supreme Court and we have referred to. It is a complex procedural

and substantive remedial scheme.[5] That Act was intended to replace prior uncoordinated government contract procedures and to provide "a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving Government contract claims." S.Rep. No. 1118, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235. The CDA covers a vast range of government contracts. Its provisions apply to any express or implied contract entered into by an executive agency for the procurement of property; services; construction, alteration, repair, or maintenance of real property; or disposal of personal property. 41 U.S.C. § 602(a). "[A] timber sale contract is a contract for the disposal of personal property within the meaning of 41 U.S.C. § 602(a) of the CDA." *Mendenhall v. Kusicko,* 857 F.2d 1378, 1379 (9th Cir.1988) (per curiam).

Under the CDA, claims are first submitted to the contracting officer, who must issue a decision in writing. 41 U.S.C. § 605. After the contractor receives notice of the contracting officer's decision, it may appeal the decision within 90 days to the agency board of contract appeals. 41 U.S.C. § 606. The members of that Board are selected in the same manner as administrative law judges. Review of the Board's decision is by the Court of Appeals for the Federal Circuit. 41 U.S.C. § 607(g)(1)(A). In the alternative, the contractor may, within twelve months of receiving the contracting officer's decision, file a direct action on the claim in the Claims Court. 41 U.S.C. § 609(a)(1). The Claims Court then has jurisdiction to render judgment on any claim arising under the CDA, including disputes concerning contract termination, rights in property, compliance with cost accounting standards, and other non-monetary disputes on which a contracting officer has issued a decision. 28 U.S.C. § 1491(a)(2).

This case is a particularly powerful example of the wisdom that the courts have shown when they have deferred to Congress regarding remedies. On any objective view, what Janicki sought was a remedy for breach of its contract with the USFS. Yet it decided to pursue damage claims against individuals who are not principals to the contract. They are merely employees of a principal— USFS. That is a rather jarring proposition all by itself. Of course, we recognize that in so stating we are declaring that we, like the district court, see the true core of Janicki's action as contractual. That is because the source of its claim to the timber was a contract and the relief sought was damages for that contract's breach. *See Mendenhall,* 857 F.2d at 1378–79 (action against the United States based on constitutional and contract claims was covered by CDA); *Ingersoll–Rand Co. v. United States,* 780 F.2d 74, 77–79 (D.C.Cir.1985) (despite claims to the contrary, an action was contractual and was covered by CDA); *see also North Star Alaska v. United States,* 14 F.3d 36, 37 (9th Cir.) (court must decide if a claim is statutorily or contractually based in order to determine Tucker Act jurisdiction), *cert. denied,* —— U.S. ——, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994); *North Star Alaska v. United States,* 9 F.3d 1430, 1433 (9th Cir.1993) (en banc) (same). That the heart of plaintiff's claim is contractual can hardly be doubted. But the more important point is that even if Janicki can point to a somewhat apposite constitutional wrong, that cannot save its *Bivens* action.

The simple fact is that Congress has created a complete scheme through which Janicki could have obtained all of the damages it now claims. It had a contract which was expressly made subject to the CDA. Moreover, Janicki itself sought to bring an action on that contract at the Claims Court, but that court found that it had done so too late. Janicki also sought the very damages it now seeks to mulct Mateer and Robertson with.

In short, there was neither need nor reason for a *Bivens* remedy. Janicki should have been content with the CDA remedy. Its failure to seek that remedy in a timely fashion is unfortunate, if mystifying. It can-

---

**5.** The fact that it draws substance from general contract principles does not change this conclusion.

not avoid that misfortune by suing Mateer and Robertson.[6]

### B. *Amendment and Transfer.*

■ After the district court dismissed the action because of the effect of the CDA, Janicki asked for leave to amend its complaint and asked for transfer of the then-amended complaint to the Claims Court. The district court denied the request. In so doing, it said: "Plaintiff should not be permitted at this late date to substitute parties and amend its complaint to add new theories. Transfer of plaintiff's case, as plead, to the United States Court of Claims would not be appropriate." Janicki asserts that the district court abused its discretion when it so ruled. We disagree.

Janicki brought this action against the individual officials in late 1991. By April of 1992, Janicki had made it clear that the action was against them in their individual capacities only. Shortly thereafter the district court issued a scheduling order which set the deadline for joining additional parties as July 17, 1992. Janicki did not decide that it wanted to join additional parties until July 7, 1993, after the district court had already issued its judgment. We have held that Federal Rule of Civil Procedure 16 is to be taken seriously and that attempts to amend complaints, which would require an amendment of the scheduling order, must be based upon good cause. *See Johnson,* 975 F.2d at 607–09. Janicki showed no good cause for its late amendment request. It knew from the beginning that it had a contract with the USFS and it deemed that contract to have been breached. It simply chose not to sue upon that breach in a timely and proper fashion.

In fact, Janicki did sue the United States, but it did so in the Claims Court. That court dismissed the action in November of 1992 because, among other things, it was untimely filed. *See Janicki Logging Co., Inc. v. United States,* No. 92–45C, slip op. at 3–4 (Cl.Ct. Nov. 23, 1992). Despite its knowledge of its true adversary, Janicki took no steps to seek an amendment until after the district court

had ruled. By no stretch of the imagination can that be considered good cause.

Janicki fares no better if its request for leave to amend is analyzed pursuant to Federal Rule of Civil Procedure 15(a). We have, of course, often noted Rule 15(a)'s direction that it is to be applied liberally in favor of amendments and that, in general, " 'leave shall be freely given when justice so requires.' " *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir.1989) (quoting Fed.R.Civ.P. 15(a)). Even then, however, we have pointed out that "[l]eave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id.*

It can hardly be gainsaid that the late desired amendment would cause undue delay and would prejudice the opposing parties. This case was first filed in November of 1991 and no attempt to join the United States was made until almost three years later, after the district court had already issued its judgment. In the meantime, an entirely separate case was started in the Claims Court. It wended its way through that court and on appeal to the Federal Circuit until it was finally dismissed in August of 1993. After all of those proceedings, Janicki finally decided to ask to amend the complaint in this case and to start all over again. Perhaps Janicki was just flailing about, but its opponents should not have to bear the brunt of that flailing.

Moreover, Janicki's approach to this litigation comes close to bad faith. Its attempt to turn a rather simple breach of contract claim into a constitutional tort brought against USFS employees in their personal capacities is very problematic. More than that, Janicki well knew that its true opponent was the USFS itself, as shown by the fact that it first sued these officials in their official as well as personal capacities. It is clear that early in this action Janicki decided that the case would have nothing to do with a claim against the government itself. Finally, Janicki hit on the interesting strategy of seeking

---

**6.** Because of this resolution, we need not, and do not, consider the further arguments that the stat-

ute of limitations and qualified immunity would also support a dismissal.

to have the district court allow an amendment to the complaint that would quite clearly deprive that court of its own jurisdiction. *Cf. Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 538 (9th Cir.1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal."); *Forbush v. R.S. Audley Inc.,* 270 F.Supp. 547, 547 (D.N.H.1966) ("Although amendments to pleadings are to be 'freely given' ... such amendments are not proper if they introduce into the suit causes of action over which the Federal District Court has no jurisdiction.").

In other words, Janicki sought to allege a new cause of action under the CDA against a new party, deprive the district court of jurisdiction, and require transfer of the case to a court which Janicki had previously approached in a tardily brought action. Given all of this, we certainly cannot determine that the district court abused its discretion when it decided that Janicki's request came too late. Although we agree that the district court was parsimonious with its language, it and the record have told us enough. *See Ascon Properties,* 866 F.2d at 1160.

■ Finally, for many of the reasons we have already mentioned, we hold that the district court did not abuse its discretion when it refused to transfer the action to the Claims Court. Of course, the district court did, indeed, have jurisdiction over the action before it—the *Bivens* claims against Mateer and Robertson. As a result, this case is quite unlike *Mendenhall,* where what the district court had before it was a CDA action against the USFS over which jurisdiction did not exist. 857 F.2d at 1378–79. As matters stood when Janicki made its motion, the district court could not transfer this action to the Claims Court pursuant to 28 U.S.C. § 1631. It could not have abused its discretion in refusing so to do. *Cf. Hays v. Postmaster Gen.,* 868 F.2d 328, 331 (9th Cir. 1989); *Taylor v. Social Sec. Admin.,* 842 F.2d 232, 233 (9th Cir.1988).

Had the district court permitted the amendment of the complaint, the issue would be closer. However, even then it is far from clear that transfer would have been "in the interest of justice." 28 U.S.C. § 1631. As we have pointed out, Janicki already had one trip to the Claims Court. In that regard, the record shows that Janicki was specifically told about the statute of limitations when the contracting officer issued his decision. Yet the Claims Court held that Janicki had waited too long to file its case. Moreover, despite all of the information at its disposal and despite the contractual language, Janicki chose to pursue a personal action against these USFS officials until the bitter end. When that end came, when Janicki experienced the bitter taste, it decided to attempt to resurrect its Claims Court action by indirection. Again, the district court did not abuse its discretion when it refused to be a party to those maneuvers and refused to impose upon the government and the Claims Court.

## CONCLUSION

The USFS found itself caught between its duties to the Northern Spotted Owl and its duties to Janicki. It acted to protect the owl by eliding a part of the timber sale. Janicki did not approve of this preference of timber for birds over timber for harvest. However, it sought relief at the wrong time and against the wrong antagonist. It brought an improper CDA action against the United States in the Claims Court. It also brought an inappropriate *Bivens* action against Mateer and Robertson. When it later attempted to have this action metamorphosed into a CDA action against the United States it acted too late. In fine, the CDA remedies made a *Bivens* action unavailable to Janicki, and its attempt to invoke the CDA itself came too late.

AFFIRMED.