**SOUTHWEST MARINE, INC.,**
**a California corporation,**
**Plaintiff,**

**v.**

**UNITED STATES of America,**
**in personam, Defendant.**

**SOUTHWEST MARINE, INC.,**
**a California corporation,**
**Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Nos. C–95–1344 WHO, C–95–1345 WHO.**

United States District Court,
N.D. California.

Dec. 5, 1995.

Peter B. Jones, Jones & Donovan, Irvine, CA, for Plaintiff.

Jeanne M. Franken, Stephen G. Flynn, United States Department of Justice, Torts, Civil Division, San Francisco, CA, Richard V. Gonzales, U.S. Department of Transportation, Maritime Administration, Washington, DC, for Defendant.

## OPINION AND ORDER

ORRICK, District Judge.

These actions were brought by plaintiff Southwest Marine, Inc. ("Southwest") against defendant United States of America ("United States"), alleging breach of government procurement contracts. The United States moves to dismiss both lawsuits for lack of subject matter jurisdiction. For the reasons set forth herein, the United States' motions to dismiss are granted.

## I.

In 1992, Southwest entered into four contracts with the United States for repairs and enhancements to two ships, the M.V. CAPE GIBSON and the M.V. CAPE GIRARDEAU. Both are public vessels under federal law. The contracting agency in each case was the Maritime Administration, part of the Department of Transportation, acting through its general agent and ship manager, American President Lines. The contracting officer was Ken Taylor.

Southwest completed the work on both ships sometime in 1994. According to Southwest, the United States has failed to pay a total of approximately $12.6 million for work performed under the contracts. Southwest brought suit on April 21, 1995, seeking relief under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601 et seq., which provides remedies for disputes involving government procurement contracts.

## II.

The United States claims that the Court lacks subject matter jurisdiction over Southwest's actions because Southwest failed to exhaust its administrative remedies under the CDA. The United States argues, and Southwest concedes, that Southwest did not submit a certified claim to the contracting officer in either case before filing these lawsuits. The United States contends that filing such claims is a prerequisite to bringing suit in federal district court under § 605 of the CDA.

Southwest disputes this interpretation of the CDA. Essentially, it argues that (1) the CDA does not preempt the Court's traditional admiralty jurisdiction over maritime contract claims, and (2) even if the CDA is the exclusive remedy for a maritime contract claim involving a government procurement contract, such maritime contract claims are exempt from the requirement of bringing a claim to the contracting officer.

## A.

The CDA provides an avenue for redress in disputes involving "any express or implied contract ... entered into by an executive agency for ... the procurement of services." 41 U.S.C. § 602(a)(2).

■ "To proceed under the CDA, an aggrieved contractor must first present its claim to the agency Contracting Officer." *Southwest Marine, Inc. v. United States,* 43 F.3d 420, 423 (9th Cir.1994); *see* 41 U.S.C. § 605(a). If the contracting officer denies the claim, then the contractor has two options: It can either (1) appeal to the governing agency board of contract appeals ("ABCA") pursuant to §§ 606 and 607(d), or (2) file suit in the Federal Court of Claims pursuant to § 609(a)(1). *Southwest,* 43 F.3d at 423. Decisions of the ABCA may be appealed to the Federal Circuit. *See* 41 U.S.C. § 607(g)(1)(A).

■ The CDA provides an alternate procedure, however, for claims arising under

maritime contracts, like those at issue here.[1] Section 603, the CDA provision for "Maritime contracts," gives jurisdiction over maritime contracts claims to the federal district courts pursuant to the Suits in Admiralty Act ("SAA"), 46 U.S.C.App. § 741 et seq., and the Public Vessels Act ("PVA"), 46 U.S.C.App. § 781 et seq. Congress chose to locate jurisdiction in the federal district courts because of the great expertise that the district courts have developed over the years on admiralty and maritime cases. S.Rep. No. 1118, 95th Cong., 2d Sess. 8, 18 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5242, 5252; *see also Southwest,* 43 F.3d at 424.

The United States argues that § 603 does not change the CDA's basic scheme; it merely places jurisdiction for CDA claims arising out of maritime contracts in the federal district courts. Therefore, § 603 does not exempt a contractor bringing a CDA claim arising out a maritime contract from the requirement of first bringing the claim to the contracting officer.

The Court turns first, as it must, to the plain language of the CDA. Section 603 provides:

> Appeals under paragraph (g) of section 607 of this title and suits under section 609 of this title, arising out of maritime contracts, shall be governed by chapter 20 [the SAA] or 22 [the PVA] of Title 46 as applicable, to the extent that those chapters are not inconsistent with this chapter.

41 U.S.C. § 603.

District courts thus have jurisdiction over two types of actions under the CDA. First, a district court has jurisdiction over "[a]ppeals under paragraph (g) of section 607 ... arising out of maritime contracts." *Id.* Those appeals are taken from the "decision of an agency board of contract appeals." *Id.* § 607(g)(1). Second, a district court has jurisdiction over "suits under section 609 ... arising out of maritime contracts." *Id.* § 603. Those are suits filed directly in the United States Claims Court "in lieu of appealing the decision of the contracting officer

[to the ABCA] under section 605." *Id.* § 609(a)(1).

Thus, the language of § 603 has been carefully drafted to give jurisdiction to the federal district courts only *after* the administrative remedies mandated by the CDA have been exhausted. The contractor must be at the stage of either filing suit following the decision of the contracting officer as contemplated by § 609(a)(1), or appealing an adverse decision by the ABCA as contemplated by § 607(g). Then, and only then, can the contractor file suit in federal district court if the CDA claim arises out of a maritime contract.

This interpretation of § 603 was adopted by the Fifth Circuit in *Bethlehem Steel Corp. v. Avondale Shipyards, Inc.,* 951 F.2d 92 (5th Cir.1992) (affirming dismissal of contractor's CDA action arising out of a maritime contract for lack of subject matter jurisdiction because the contractor had not exhausted the CDA's administrative remedies). The court concluded that "Congress intended for the Contract Disputes Act to make an administrative dispute resolution procedure a prerequisite to federal admiralty jurisdiction over government contracts for ship repair under the Suits in Admiralty Act." *Id.* at 93. The court's reasoning was based on "the specific language of § 603":

> Section 603 permits *appeals* to be governed by the [SAA] or the [PVA] "to the extent those chapters are not inconsistent with this chapter." In the context of the Contract Disputes Act, "appeals" are requests for relief from adverse administrative contract determinations. Had Congress intended to exempt government maritime contracts entirely from the Contract Disputes Act, it could have done so more forthrightly than simply by allowing "appeals" to be maintained in the federal district courts.

*Id.* at 94.

It is, therefore, clear that section 603, "rather than completely excluding maritime contracts from the [CDA], simply vests appeals from the administrative determination of claims in the district courts, rather than in

---

1. The parties agree that the contracts at issue are maritime contracts. *See New Bedford Dry Dock Co. v. Purdy,* 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922) (holding that a contract for repair of a vessel is a maritime contract).

the Court of Claims or the Court of Appeals for the Federal Circuit." *Id.* at 94 (quoting *River & Offshore Servs. Co. v. United States,* 651 F.Supp. 276, 281 (E.D.La.1987)).

The Ninth Circuit approved the reasoning of *Bethlehem Steel* in *Southwest Marine,* 43 F.3d at 423. In *Southwest,* a contractor who had brought a CDA claim involving a maritime contract successfully appealed the adverse decision of the ABCA in district court. The contractor then sought attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504, but the district court dismissed this claim.

On appeal, the contractor argued that even though attorneys' fees were not available under the CDA, they were available under general maritime law. The Ninth Circuit rejected this argument, explaining:

> [The contractor's] argument reflects a misunderstanding of the interplay between the admiralty statutes and the CDA. In the context of an appeal from [a decision of the ABCA,] maritime jurisdiction under the [SAA] and the [PVA] serves only to place *appellate* jurisdiction in the district courts. *It does not transform a contract claim under the CDA into an admiralty claim.* Indeed, the CDA incorporates maritime jurisdiction "only to the extent [it is] not inconsistent with this chapter." 41 U.S.C. § 603.
>
> . . . .
>
> *Clearly, while not all claims involving maritime contracts are perforce CDA claims, plaintiffs who seek recovery in contract under the CDA must comply with its provisions. See Bethlehem Steel Corp. v. Avondale Shipyards, Inc.,* 951 F.2d 92 (5th Cir.1992) (holding that admiralty jurisdiction does not exempt plaintiff in maritime contract suit from the exhaustion of remedies requirement of the CDA). By focusing on admiralty law, [the contractor] loses sight of the fact that its claim for fees rests solely on its status as a "prevailing party" in an administrative action *under the CDA.* The lower court did not address an admiralty basis for awarding fees because [the contractor] has not prevailed in any admiralty action.

*Id.* at 424 (citations omitted; emphasis added).

Accordingly, the Court finds that submitting a certified claim to the contracting officer is indeed a prerequisite to subject matter jurisdiction over claims arising out of maritime contracts brought under the CDA.

### B.

Southwest, however, argues that its claims are "traditional maritime claims" subject to the Court's general admiralty jurisdiction *independent* of the CDA's provisions.

The United States contends that the CDA provides the exclusive remedy for claims arising out of any government procurement contract, including maritime contracts. Several courts have concluded that "[w]hen the [CDA] applies, it provides the *exclusive* mechanism for dispute resolution; [it] is not designed to serve as an alternative administrative remedy, available at the contractor's option." *Dalton v. Sherwood Van Lines, Inc.,* 50 F.3d 1014, 1017 (Fed.Cir.1995) (emphasis added); *accord United States v. J & E Salvage Co.,* 55 F.3d 985, 987 (4th Cir.1995); *Richland–Lexington Airport Dist. v. Atlas Properties, Inc.,* 854 F.Supp. 400, 415 (D.S.C. 1994).

The Ninth Circuit, however, has rejected the conclusion that "the CDA provides the exclusive basis for litigation of claims relating to government contracts." *Wright v. United States Postal Serv.,* 29 F.3d 1426, 1428 (9th Cir.1994). In two cases, the Ninth Circuit has held that where another statute provides an *independent* grant of jurisdiction to the district courts, the CDA does not preempt a contractor from bringing its action under that other statute, even where the contracts at issue are within the scope of the CDA. *See id.* at 1430 (subcontractors could bring equitable lien action against the United States Postal Service under the "sue and be sued" provision of the Postal Reorganization Act, 39 U.S.C. § 401(1)); *Concrete Tie, Inc. v. Liberty Constr., Inc.,* 9 F.3d 800, 801–02 (9th Cir.1993) (contractor could bring equitable lien action against the Small Business Administration under the "sue and be sued"

provision of the Small Business Act, 15 U.S.C. § 634(b)(1)).

■ Thus, under the reasoning of *Concrete Tie* and *Wright*, a contractor is apparently free to bring any claim in district court that has an independent jurisdictional basis apart from the CDA, even where the action could have been brought under the CDA. *See Wright*, 29 F.3d at 1429–31.

Southwest still cannot prevail, however, for two reasons. First, Southwest is not asserting a cause of action under a separate, independent, statutory grant of subject matter jurisdiction to the federal district courts. Rather, the jurisdictional basis for Southwest's asserted "traditional maritime claims" is the Court's admiralty jurisdiction under the SAA and the PVA. That is the same grant of jurisdiction encompassed by § 603 of the CDA, not an independent basis of jurisdiction under a separate statutory scheme. Although Southwest's complaints state that it has a maritime claim under the SAA and the PVA giving Southwest a cause of action *in personam* against the United States, this is inaccurate. The SAA and the PVA do not themselves provide a cause of action against the United States; they simply waive sovereign immunity in admiralty suits where admiralty law provides a cause of action. *Nelson v. United States*, 639 F.2d 469, 473 (9th Cir.1980). Each of these statutes "merely provides a jurisdictional hook upon which to hang a traditional admiralty claim." *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444 (5th Cir.1982).

Second, Southwest's purported non-CDA causes of action are based wholly on the United States' alleged breach of the four contracts. As a result, the CDA governs those claims because they arise out of express government procurement contracts. *See Mendenhall v. Kusicko*, 857 F.2d 1378 (9th Cir.1988) (holding that breach of contract claim was properly dismissed because it was subject to the jurisdictional provisions of the CDA). Assuming *arguendo* that Southwest could assert a non-CDA claim with an independent jurisdictional basis, it is none-theless clear that Southwest has no such claim. Southwest may not raise phantom claims simply to circumvent the CDA.

A Fourth Circuit case is instructive on this issue. In *J & E Salvage*, the district court had concluded that it lacked subject matter jurisdiction over the government's CDA claims.[2] 55 F.3d 985. Nevertheless, the district court exercised jurisdiction over "additional claims styled as tort actions for 'conversion' and 'replevin.'" *Id.* at 986.

On appeal, the Fourth Circuit held that the district court lacked subject matter jurisdiction over the purported tort claims. The court concluded that the government's "non-CDA" claims were really "contract actions ... dressed in tort clothing." *Id.* at 988. The court explained:

It is well-established ... that disguised contract actions may not escape the CDA. Neither contractors nor the government may bring a contract action in federal district court simply by recasting claims in tort language or as some statutory or regulatory violation. Effective enforcement of the jurisdictional limits of the CDA mandates that courts [exclude such disguised claims].

*Id.* (citations omitted). Finding that the "crux" of the government's case was a dispute involving a specific contract, the court held: "Because the government's allegations are no more than cloaked contract claims, they belong in the Court of Claims under the CDA, and the district court lacked jurisdiction over them." *Id.* at 989 (footnote omitted); *see also Ingersoll–Rand Co. v. United States*, 780 F.2d 74 (D.C.Cir.1985) (action styled as wrongful termination of contract and unlawful resolicitation of contract in violation of federal regulations was essentially a breach of contract claim that had to be brought under the CDA).

The Ninth Circuit reached a similar conclusion in *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 565 (9th Cir.1994). There, the court affirmed the dismissal of a logging company's *Bivens* action, which alleged that

2. These claims did not involve maritime contracts and, thus, the district court clearly had no jurisdiction over them; jurisdiction lay only in the ABCA, § 606, or in the Federal Court of Claims, § 609(a).

the government had violated its constitutional rights by cancelling a portion of its logging contract. The "true core" of the plaintiff's claim was contractual, "because the source of its claim to the timber was a contract and the relief sought was damages for that contract's breach." *Id.* at 565. Thus, the availability of the CDA remedies precluded the plaintiff's *Bivens* action. *Id.* at 567; *see also Mendenhall,* 857 F.2d at 1379.

Southwest's complaints are based entirely on the contractual disputes and do not state any independent cause of action in tort, admiralty, or anything else. *See id.* at 989. Southwest has specifically stated that it is not attempting to claim maritime liens for ship repair work or "necessaries" furnished to the two vessels. Indeed, Southwest could not do so because the Maritime Commercial Instruments and Liens Act ("MCILA"), 46 U.S.C. §§ 31301 et seq., explicitly prohibits bringing actions based on maritime liens against public vessels. MCILA, 46 U.S.C. § 31342(b). Accordingly, Southwest must bring its claims under the CDA.

As discussed above, Southwest did not file certified claims with the contracting officer prior to filing its two complaints in the Court. Because Southwest failed to exhaust the CDA's administrative remedies, this Court lacks subject matter jurisdiction over these suits.

### III.

Accordingly,

IT IS HEREBY ORDERED that the United States' motions to dismiss are GRANTED, and the actions are dismissed with prejudice.