# United States Court of Appeals
## For the First Circuit

No. 02-1944

MAUREEN M. BRITELL,
Plaintiff, Appellee,

v.

UNITED STATES OF AMERICA,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Selya, Circuit Judge,
Farris,* Senior Circuit Judge,
and Howard, Circuit Judge.

Robert M. Loeb, Appellate Staff, Civil Division, United States
Department of Justice, with whom Robert D. McCallum, Jr., Assistant
Attorney General, Michael J. Sullivan, United States Attorney,
Gregory G. Katsas, Deputy Assistant Attorney General, and Eric D.
Miller, Attorney, were on brief, for appellant.
John H. Henn, with whom Jessica M. Silbey, Seth Nesin, Foley
Hoag LLP, Simon Heller, Brigitte Amiri, and The Center for
Reproductive Law & Policy were on brief, for appellee.

January 28, 2003

_____
*Of the Ninth Circuit, sitting by designation.

**SELYA**, <u>Circuit Judge</u>.  The parties — who agree on little else — mutually acknowledge that the appeal in this case was improvidently taken to this court and that we lack jurisdiction over it.  The question remains, however, whether we should dismiss the appeal (thus leaving the district court's judgment intact) or transfer it to the proper venue (the Court of Appeals for the Federal Circuit).  For the reasons that follow, we hold that dismissal would not be in the interest of justice (and, accordingly, grant the government's motion to transfer).

## I.

## Background

At this stage of the proceedings, the intricacies of the underlying action are of only peripheral interest.  We therefore sketch the facts and the travel of the case, urging readers who hunger for more exegetic detail to consult the lower court's opinions.  <u>See</u> <u>Britell</u> v. <u>United States</u>, 204 F. Supp. 2d 182 (D. Mass. 2002) (<u>Britell II</u>); <u>Britell</u> v. <u>United States</u>, 150 F. Supp. 2d 211 (D. Mass. 2001) (<u>Britell I</u>).

Early in the term of her pregnancy, plaintiff-appellee Maureen M. Britell, the wife of an Air National Guard officer, learned that the fetus she carried was anencephalic.  Given the grim prognosis,[1] Britell elected to have her pregnancy terminated.

---

[1]Anencephalia is a rare condition, usually fatal before birth (or, if not, shortly thereafter).  The Merck Manual of Diagnosis and Therapy 2222 (Mark H. Beers, M.D. & Robert Berkow, M.D. eds.

The procedure was performed at New England Medical Center (NEMC), a renowned Boston teaching hospital.

Britell maintained her health care coverage through the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), a government plan that provides medical benefits for dependents of military personnel. After a NEMC physician performed the abortion that Britell requested, NEMC submitted a claim to CHAMPUS. In accordance with federal law, see 10 U.S.C. § 1093(a) (reprinted in the appendix); 32 C.F.R. § 199.4(e)(2) (same), CHAMPUS refused to pay for the cost of the abortion. Britell paid NEMC and then brought suit against the United States for $4,507.05, claiming, inter alia, that the denial of coverage violated her constitutional rights.

The district court granted summary judgment in Britell's favor, concluding that "there [was] no rational, legitimate state interest in denying coverage" for abortion services in the circumstances of this case. Britell II, 204 F. Supp. 2d at 185. The government filed a timely notice of appeal with this court. The parties fully briefed the case, and we scheduled oral argument for December 4, 2002.

Approximately two weeks before the date set for oral argument, the government awoke to the fact that the United States Court of Appeals for the Federal Circuit had exclusive jurisdiction

1999).

over appeals in cases based in whole or in part on 28 U.S.C. § 1346 (the so-called Little Tucker Act). See 28 U.S.C. § 1295(a)(2) (reprinted in the appendix). Based upon this belated realization, the government moved to transfer the appeal under 28 U.S.C. § 1631 (reprinted in the appendix), a statute that authorizes a court faced with a want of jurisdiction either to dismiss the proceeding before it or, in the alternative, to transfer that proceeding to a court of proper competence if doing so "is in the interest of justice." Britell opposed a transfer and asked instead that we dismiss the appeal outright. On December 4, 2002, we heard oral argument on the question of transfer versus dismissal.

## II.

## Analysis

We subdivide our discussion of the pending motion into three segments. We begin with the question of appellate jurisdiction. We then parse the transfer statute and, finally, apply it.

## A.

## Appellate Jurisdiction

Because federal courts are courts of limited jurisdiction, each case must come within some articulable grant of jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). Such grants may be either constitutional or statutory in nature. Id. However, jurisdiction cannot be

conferred upon a federal court by waiver, consent, or collusion of the parties.  Irving v. United States, 162 F.3d 154, 161 (1st Cir. 1998) (en banc).

In this instance, the record reveals beyond hope of contradiction that we lack jurisdiction to decide the merits of the government's appeal.  Britell's complaint premised the district court's jurisdiction, in relevant part, on 28 U.S.C. § 1346(a). That statute — reprinted in the appendix — grants district courts jurisdiction (with exceptions not apposite here) over non-tort civil actions or claims against the United States, not exceeding $10,000 in amount, whether founded upon the Constitution, a federal statute or regulation, or a contract.  Because Britell's case fits comfortably within those contours, the United States District Court for the District of Massachusetts had original jurisdiction over it.

This brings us to the appeal.  Although most district court judgments are appealable to the court of appeals for the circuit in which the district court sits, see 28 U.S.C. § 1291, that pattern does not always obtain.  There are several exceptions, one of which is pertinent here.  By statute, the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over "an[y] appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C. § 1346] . . . ."  28 U.S.C. §

1295(a)(2).  While that statute contains some wiggle room, see id.,
no way around its jurisdictional mandate applies in the
circumstances at hand.  Consequently, deciding this appeal is the
exclusive prerogative of the Federal Circuit.

**B.**

**The Transfer Statute**

From what we already have written, it is readily evident
that this court lacks jurisdiction over the merits of the instant
appeal.  In such circumstances, Congress has granted federal courts
limited authority to transfer an action or appeal to a federal
court of competent jurisdiction.  The controlling statute reads in
pertinent part:

> Whenever a civil action is filed in a court .
> . . or an appeal, including a petition for
> review of administrative action, is noticed
> for or filed with such a court and that court
> finds that there is a want of jurisdiction,
> the court shall, if it is in the interest of
> justice, transfer such action or appeal to any
> other such [federal] court in which the action
> or appeal could have been brought at the time
> it was filed or noticed, and the action or
> appeal shall proceed as if it had been filed
> in or noticed for the court to which it is
> transferred on the date upon which it was
> actually filed in or noticed for the court
> from which it was transferred.

28 U.S.C. § 1631.

Although the grant of authority is clear, the guidance
provided by the text of the statute appears somewhat contradictory.
On the one hand, Congress's use of the word "shall" in section 1631

seemingly dictates a preference for transfer in all cases that could have been brought in some other federal court.[2]  See, e.g., Webster's Third New Int'l Dictionary 2085 (1993) (stating that "shall" typically is "used in laws . . . to express what is mandatory").  On the other hand, section 1631 contains a qualifying phrase — "if it is in the interest of justice" — and that qualifier seems to call for a balancing of the equities (and, thus, to make the transfer decision discretionary).  We reconcile this tension by examining the text, structure, and history of section 1631.  See United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987).  In the end, we conclude that Congress intended to create a presumption — albeit a rebuttable one — in favor of transfer.

The existence of the presumption is easily discerned. Congress's use of the phrase "shall . . . transfer" in section 1631 persuasively indicates that transfer, rather than dismissal, is the option of choice.  The legislative history likewise points to a presumption in favor of transfer.  Congress adopted legislation, now codified as section 1631, in the wake of a case in which the District of Columbia Circuit acknowledged an ambiguity involving which of two courts had appellate jurisdiction, and, although it affirmed a dismissal for want of jurisdiction, it directed that the

---

[2]The universe of courts to which section 1631 applies is delimited by 28 U.S.C. § 610 (reprinted in the appendix).

appellant be permitted to file a petition for reconsideration with the proper authority. Investment Co. Inst. v. Bd. of Govs. of the Fed. Reserve Sys., 551 F.2d 1270, 1282-83 (D.C. Cir. 1977). The court suggested that, in the future, counsel would do well "to file petitions in both courts . . . if there is any doubt." Id. at 1282. Judge Leventhal, in a powerful concurring opinion, urged "enactment of a general statute permitting transfer between district courts and courts of appeals in the interest of justice." Id. at 1283 (Leventhal, J. concurring).

In response to the concerns raised by Judge Leventhal, Congress enacted section 1631. Congress crafted the statute to achieve two closely related goals. First, it sought to ensure that "a litigant [does not] find himself without a remedy because of a lawyer's error or a technicality of procedure [that results from] uncertainty in some statutes regarding which court has review authority." S. Rep. No. 97-275, at 11 (1982), reprinted in 1982 U.S.C.C.A.N. 11, 21. Second it sought to prevent duplicitous litigation that would prove "wasteful and costly." Id. The conclusion that transfer, rather than dismissal, is the option of choice is consistent with the formulation of these goals.

So read, section 1631 protects litigants against both statutory imprecision and lawyers' errors. It also offers a practical alternative to the prophylactic, but inordinately wasteful, precaution of double filing. Last — but far from least

— reading section 1631 to create such a presumption furthers the salutary policy favoring the resolution of cases on the merits. See, e.g., Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996); Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992). Put another way, transfer is presumptively preferable because the dismissal of an action or appeal that might thrive elsewhere is not only resource-wasting but also justice-defeating. See Cruz-Aguilera v. INS, 245 F.3d 1070, 1074 (9th Cir. 2001).

Even though there is a presumption in favor of transfer, the text of the statute compels the conclusion that the presumption is rebuttable. After all, Congress inserted language specifically designed to ensure that transfer would not be automatic; it conditioned transfer in any particular case on a finding that such a course of action "is in the interest of justice." 28 U.S.C. § 1631. Only if an inquiring court determines that a transfer is not in the interest of justice is the presumption rebutted.

Thus, even though transfer is the option of choice, an inquiring court must undertake case-specific scrutiny to ferret out instances in which the administration of justice would be better served by dismissal. See Horsley v. Johnson, 197 F.3d 134, 136 (5th Cir. 1999); see also Am. Alliance, 92 F.3d at 61 (observing that "abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct"). Given

the language of the statute, we are confident that Congress wanted courts to exempt from the transfer mandate those cases in which transfer would unfairly benefit the proponent, e.g., Janicki Logging Co. v. Mateer, 42 F.3d 561, 566-67 (9th Cir. 1994), impose an unwarranted hardship on an objector, e.g., id. at 566, or unduly burden the judicial system, e.g., Phillips v. Seiter, 173 F.3d 609, 610-11 (7th Cir. 1999). In conducting its inquiry into the presence or absence of such factors, a putative transferor court must consider the totality of the circumstances. See Liriano v. United States, 95 F.3d 119, 122-23 (2d Cir. 1996).

Among other things, this responsibility obligates the court to engage in whole-record review. This obligation flows naturally from the language of section 1631, which directs the putative transferor court to determine if "the action or appeal could have been brought at the time it was filed or noticed" in any other federal court. 28 U.S.C. § 1631. Common sense suggests that, in order to comply with this directive, the court must examine the complete record.

This intuition is reinforced by the fact that the interest of justice analysis necessarily involves considerations of judicial administration (and, therefore, requires at least a preliminary evaluation of the parties' positions). If, for example, an action or appeal has obvious merit and the filing period has expired, dismissal — even dismissal without prejudice —

would frustrate one of the principal objectives of section 1631. See Ross v. Colo. Outward Bound Sch., 822 F.2d 1524, 1526-27 (10th Cir. 1987). The flip side of the coin is that if an action or appeal is fanciful or frivolous, it is in the interest of justice to dismiss it rather than to keep it on life support (with the inevitable result that the transferee court will pull the plug). See Seiter, 173 F.3d at 610-11 (reasoning that a case that "is a sure loser" should be dismissed rather than transferred). Either way, a look at the merits is indicated.

## C.

### The Case at Bar

Against this backdrop, we turn to the case at bar. We start with a presumption in favor of transfer — a presumption that is heightened by our knowledge that the appeal period has run (and, therefore, that dismissal will leave the government without any effective means of obtaining judicial review of the district court's judgment).

Our examination of the record furnishes no compelling rebuttal to this presumption. Despite Britell's insinuations to the contrary, we have no reason to believe that the government acted in bad faith. It had nothing to gain — and much to lose — by filing its notice of appeal in the wrong court. Moreover, the government exercised due diligence once it discovered its error. Finally, Britell will suffer only incidental inconvenience from a

transfer — the need for refiling her brief and the frustration of waiting a few more months before the litigation is resolved. Inconvenience of this sort simply does not amount to the kind of prejudice that would justify the outright dismissal of an action or appeal. See Janicki Logging, 42 F.3d at 566.

In an effort to blunt the force of this reasoning, Britell argues that this case involves only a small amount of money; that the government, which should be expected to possess special expertise with regard to the operation of the Little Tucker Act, created the jurisdictional glitch;[3] and that, therefore, the interest of justice would be served by ending the matter here and now. We do not agree with this assessment.

It is nose-on-the-face plain that the decision below has ramifications far beyond its impact on this particular dispute. The decision undermines an Act of Congress and, in the bargain, invalidates part of a major program administered by the Executive Branch of the federal government. What is more, its correctness seems, at first blush, to be a matter over which reasonable jurists could disagree. It follows that appellate review of the district

---

[3]This aspect of Britell's argument prompts us to note that the government is not the only party who should be expected to know the jurisdictional rules. The plaintiff is "the master of the complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987). Thus, Britell was chargeable with knowledge that, by invoking 28 U.S.C. § 1346 as the basis of the district court's jurisdiction, any appeal would have to be heard in the Federal Circuit.

court's decision may well prove important from the standpoint of public policy. That is a significant factor in the decisional calculus: a court holding the levers of section 1631 should consider the consequences of both transfer and dismissal in deciding which course of action to follow. <u>Seiter</u>, 173 F.3d at 610-11 (citing <u>Christianson</u> v. <u>Colt Indus. Operating Corp.</u>, 486 U.S. 800, 819 (1988)).

We need go no further. Congress enacted section 1631 in part to protect a litigant's remedy notwithstanding her lawyer's bevue. S. Rep. No. 97-275, at 11 (1982), <u>reprinted</u> <u>in</u> 1982 U.S.C.C.A.N. at 21. This case is a paradigmatic example of the type of situation that the statute was designed to address. Consequently, we hold that this appeal should be transferred to the United States Court of Appeals for the Federal Circuit. Given the totality of the circumstances, the interest of justice supports, rather than contradicts, such a course of action.

**The government's motion to transfer is granted, and the Clerk of this court is directed to take the necessary steps to effectuate the prompt transfer of the appeal to the United States Court of Appeals for the Federal Circuit**.

**STATUTORY APPENDIX**

The following statutory and regulatory provisions are relevant to this opinion.

———————————

**10 U.S.C. § 1093(a) (1994 & Supp. 1999). Performance of abortions: restrictions**
Funds available to the Department of Defense may not be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term.

———————————

**32 C.F.R § 199.4(e)(2) (2002). Basic program benefits.**
Abortion. The statute under which CHAMPUS operates prohibits payment for abortions with one single exception--where the life of the mother would be endangered if the fetus were carried to term. Covered abortion services are limited to medical services and supplies only. Physician certification is required attesting that the abortion was performed because the mother's life would be endangered if the fetus were carried to term. Abortions performed for suspected or confirmed fetal abnormality (e.g., anencephalic) or for mental health reasons (e.g., threatened suicide) do not fall within the exceptions permitted within the language of the statute and are not authorized for payment under CHAMPUS.

———————————

**28 U.S.C. § 610 (2000). Courts defined**
As used in this chapter the word "courts" includes the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade.

———————————

**28 U.S.C. § 1295(a)(2) (2000). Jurisdiction of the United States Court of Appeals for the Federal Circuit**

The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction--

* * *

(2) of an appeal from a final decision of a district court of the United States . . ., if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title, except that jurisdiction of an appeal in a case brought in a district court under section 1346(a)(1), 1346(b), 1346(e), or 1346(f) of this title or under section 1346(a)(2) when the claim is founded upon an Act of Congress or a regulation of an executive department providing for internal revenue shall be governed by sections 1291, 1292, and 1294 of this title.

_____

**28 U.S.C. § 1346(a)(2) (2000). United States as defendant**
The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

* * *

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

_____

**28 U.S.C. § 1631 (2000).  Transfer to cure want of jurisdiction**
Note:  the pertinent text of this statute is reproduced in the body of the court's opinion, and, therefore, is not reprinted here.