# United States Court of Appeals
## For the First Circuit

No. 04-1631

RALPH J. CIMON, III,

Plaintiff, Appellant,

v.

CHRISTOPHER GAFFNEY;
GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

C. Donald Briggs, III, with whom Briggs & Counsel was on brief for appellant.
Russell B. Pierce, Jr., with whom Norman, Hanson & Detroy, LLC was on brief for appellee, Christopher Gaffney.
Geraldine G. Sanchez, with whom Gavin G. McCarthy and Pierce Atwood LLP were on brief for appellee, Guardian Life Insurance Company of America.

March 10, 2005

**STAHL, Senior Circuit Judge**.   In 2003, Ralph Cimon ("Ralph"), who had purchased a disability insurance policy from Guardian Life Insurance Company of America ("Guardian"), sued Guardian and Christopher Gaffney ("Gaffney"), the Guardian agent who had sold him the policy, after Guardian terminated his policy due to his failure to make a timely premium payment.  The suit was brought in Maine.[1]  Guardian filed a motion for summary judgment and Gaffney filed a motion to dismiss.  In response to the motion to dismiss, Ralph filed a motion to transfer his claims against Gaffney to the United States District Court for the District of Massachusetts.  The district court granted both the motion for summary judgment and the motion to dismiss, and it denied the motion to transfer.  Ralph now seeks review of the grant of summary judgment and the denial of his request to transfer.  We affirm the grant of the motion for summary judgment and vacate the denial of the motion to transfer.

## I.  Background

We review the facts in the light most favorable to Ralph. See, e.g., McAdams v. Mass. Mut. Life Ins. Co., 391 F.3d 287, 290 (1st Cir. 2004) (recounting the facts "in the light most favorable to the party opposing summary judgment").

---

[1]The action was originally filed in state court, but it was removed to the United States District Court for the District of Maine pursuant to that court's diversity jurisdiction.

In 1993, Guardian issued a disability insurance policy to Ralph.[2]  The policy was "Non-Cancellable and Guaranteed Renewable to Age 65" and was "issued in consideration of . . . the payment of premiums," which were to be paid on a quarterly basis.  The policy listed "only one condition for [its] renewal . . . :  the premiums [had to] be paid as [the policy] required."  And, the policy provided that "[t]he payment of any premium will not continue this policy in force beyond the date when the next premium is due, except for [a thirty-one day] grace period . . . ."

From 1993 to 2000, Ralph timely paid his premiums.  However, he failed to pay his quarterly premium that was due in December 2000 and failed to make subsequent payments due in March 2001, June 2001, and September 2001.

Late in the summer of 2000, Ralph and his wife, Jean Cimon ("Jean"), moved from Massachusetts to Maine.  Prior to moving, Jean mailed a change of address card to Guardian.  At the time of the move, Jean also called Gaffney to inform him of the move.  During the call, Jean gave Gaffney their new Maine address and telephone number, and she attempted to schedule an appointment for Ralph so that he and Gaffney could discuss his insurance coverage.  Gaffney, however, told Jean that he was busy and would

_____

[2]In 2001, Guardian merged with, and became the successor in interest to, Berkshire Life Insurance Company, which actually issued the policy in question.  For ease of reference, we refer to the relevant insurance company as Guardian throughout.

call her back at a more convenient time. Gaffney never called Jean back, and Jean did not make any further attempt to contact Gaffney.

On November 29, 2000, Guardian sent Ralph a letter stating that he had a premium payment due on December 28, 2000. The premium due date came and went without Guardian receiving a payment. On January 28, 2001, Guardian sent Ralph a second letter in which it offered to accept a late payment. Then, on March 6, 2001, having still not received the December 28, 2000 payment, Guardian sent Ralph a third letter informing him that his policy had lapsed.[3] Ralph did not receive any of the letters, which were apparently sent to an incorrect address in Maine.

From 1993 to 2000, Ralph had received letters on a quarterly basis alerting him of his premium payment due dates. By 2000, Ralph had become accustomed to, and relied on, receiving such letters. In fact, Ralph paid his premiums only after receiving notice that payments were due. Thus, because Ralph never received a letter reminding him to pay his December 28, 2000 premium, he never paid that premium (or the three premiums due thereafter).

In October of 2001, Ralph became disabled. On November 16, 2001, Jean called Guardian and learned that the policy had been cancelled. On November 27, 2001, Ralph sent a letter to Guardian

---

[3]It is not clear whether this final letter stated that the policy had already lapsed or that the policy would lapse if Ralph failed to pay the premium by a specified date. For purposes of this appeal, we assume it said that the policy had already lapsed.

requesting that the policy be reinstated and giving notice that he intended to file a claim pursuant to Mass. Gen. Laws ch. 93A, § 2[4] if Guardian refused his request.[5] Ralph also sent Guardian a check for the unpaid premiums. Guardian refused to reinstate the policy.

As a result, in October 2003, Ralph sued Guardian and Gaffney in Maine, claiming that he was entitled to damages because the two "breached numerous duties of care" they owed to him under the policy in connection with their failure to ensure that premium notices were sent to his correct address. In addition, Ralph alleged that he was entitled to recover under Mass. Gen. Laws ch. 93A, § 2 for Guardian and Gaffney's refusal to settle his claim and reinstate the policy.[6] Ralph also asserted that the two breached the policy, and should be estopped from terminating the policy, due to their failure to send premium notices to his correct address.

In response, Guardian filed a motion for summary judgment and Gaffney filed a motion to dismiss. Guardian, citing Mass. Gen.

---

[4]The statute states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Mass. Gen. Laws ch. 93A, § 2(a).

[5]It is not clear from the record whether Ralph sent a similar letter to Gaffney.

[6]"Unfair claim settlement practices" constitute unfair methods of competition and unfair or deceptive acts or practices in the business of insurance under Mass. Gen. Laws ch. 93A, § 2. Mass. Gen. Laws ch. 176D, § 3(9).

-5-

Laws ch. 175, § 110B,[7] insisted that it was entitled to summary judgment because the policy had lapsed as a matter of law.[8]  The district court agreed and allowed Guardian's motion.[9]  Gaffney moved for dismissal based on lack of personal jurisdiction.[10] Ralph

---

[7]Section 110B provides:
No policy of insurance . . . , except a policy which by its terms is cancellable by the company or is renewable or continuable with its consent, or except a policy the premiums for which are payable monthly or at shorter intervals, shall terminate or lapse for nonpayment of any premium until the expiration of three months from the due date of such premium, unless the company within not less than ten nor more than forty-five days prior to said due date, shall have mailed . . . a notice showing the amount of such premium and its due date.  Such notice shall also contain a statement as to the lapse of the policy if no payment is made as provided in the policy.  If such a notice is not so sent, the premium in default may be paid at any time within said period of three months. . . . No action shall be maintained on any policy to which this section applies and which has lapsed for nonpayment of any premium unless such action is commenced within two years from the due date of such premium.
Mass. Gen. Laws ch. 175, § 110B.

[8]In moving for summary judgment, Guardian also argued that all of Ralph's claims were time-barred pursuant to the last sentence of Mass. Gen. Laws ch. 175, § 110B.  See supra note 7.  The district court did not address this argument and, without passing on its merits, neither do we.

[9]Because the district court found that "the policy terminated by law [due to the fact that the December 2000 premium remained unpaid three months after it was due] without any requirement of notice to [Ralph]," and because all of Ralph's claims against Guardian were based on its refusal to accede to his demand that the policy be reinstated and its failure to send premium notices to his correct address, the district court decided that Guardian was entitled to summary judgment.

[10]Gaffney also moved for dismissal based on improper venue and Ralph's failure to state a claim on which relief could be granted.

responded by filing a motion to transfer the action against Gaffney to Massachusetts pursuant to 28 U.S.C. § 1631.[11]  In granting Gaffney's motion to dismiss, the district court ruled that it lacked personal jurisdiction and that transfer would not be in the interest of justice.[12]  Ralph seeks review of the district court's grant of Guardian's motion for summary judgment and refusal to transfer the action against Gaffney.[13]

## II.  Discussion

We first consider whether the district court erred in granting Guardian's motion for summary judgment and then decide whether it erred in denying Ralph's motion to transfer.

A.        The Grant of Guardian's Motion for Summary Judgment

We review the grant of a motion for summary judgment de novo.  GTE Wireless, Inc. v. Cellexis Int'l, Inc., 341 F.3d 1, 4 (1st Cir. 2003).  Summary judgment is appropriate only if the record reveals "that there is no genuine issue as to any material

---

[11]Ralph also responded by arguing that the court could exercise jurisdiction over Gaffney.  Section 1631 of Title 28 provides:
    Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . .

[12]The district court determined that transfer would not be in the interest of justice solely because it was granting Guardian's motion for summary judgement.

[13]Ralph does not challenge the district court's ruling that it lacked personal jurisdiction over Gaffney.

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We may affirm a grant of summary judgment on any ground supported by the record. See Geffon v. Micrion Corp., 249 F.3d 29, 35 (1st Cir. 2001).

The district court granted Guardian's motion for summary judgment based on its finding that, under Mass. Gen. Laws ch. 175, § 110B,[14] Ralph's policy automatically terminated when he failed to pay the December 2000 premium within three months of its due date. We think that the district court was wrong to interpret section 110B as providing for automatic termination of a policy after three months for nonpayment of a premium. We read the statute as providing a degree of protection for the insured by putting limits on an insurance company's contractual ability to cancel a policy based on nonpayment of a premium; we do not read it as providing for termination as a matter of law. Still, the statute does not prohibit an insurance company from terminating a policy--in accordance with the policy's terms--for nonpayment of a premium. Rather, it simply provides that a policy cannot be terminated for nonpayment of a premium until three months after the date on which the premium was due (unless notice was sent in accordance with the statute). See supra note 7.

---

[14]There is no dispute that Massachusetts law governs this action.

Here, the policy stated that it would terminate due to a missed premium payment: "The payment of any premium will not continue this policy in force beyond the date when the next premium is due . . . ."[15] And, starting with the December 28, 2000 payment, Ralph missed four consecutive premium payments and did not attempt to tender a late payment until November of 2001. Thus, regardless of whether Guardian sent notice of the December 28, 2000 payment deadline, the policy terminated <u>pursuant to its terms</u> on March 28, 2001--three months after the due date of the first missed premium and well before Ralph attempted to tender a late payment in November of that year.[16]

Ralph argues that Guardian should be estopped from terminating the policy pursuant to his nonpayment of the December 28, 2000 premium because he relied on Guardian to send notices of

---

[15]Although the policy stated that there would be a grace period following a missed premium payment of only thirty-one days, we have not been presented with sufficient evidence that Guardian complied with section 110B's premium notice requirement. Therefore, we cannot say that Guardian was entitled to terminate the policy at the end of the thirty-one day grace period (that is, prior to the expiration of section 110B's three-month period).

[16]Although Guardian sent Ralph notice that the policy had lapsed on March 6, 2001, prior to the date on which the policy could have been terminated according to section 110B, that does not alter our conclusion that the policy terminated for nonpayment before Ralph tendered payment for the missed premium. To be sure, had Ralph tendered payment on, for example, March 21, 2001 (after the date of the lapse notice but before the expiration of section 110B's three-month period), we would be dealing with a different case. But, he did not tender payment until November 2001 and, thus, cannot take advantage of Guardian's premature lapse notice.

premium payment deadlines before making such payments[17] and Guardian failed to send proper notice of the December 28, 2000 deadline.[18] To establish that Guardian should be estopped from terminating the policy due to the missed premium, Ralph must convince us that, among other things, there is an equitable defense available to an insured who violates a contractual obligation and he acted reasonably in relying on Guardian to remind him of the December 28, 2000 payment deadline before making that payment. See <u>Turnpike Motors, Inc.</u> v. <u>Newbury Group, Inc.</u>, 596 N.E.2d 989, 993 (Mass. 1992) ("It is . . . necessary . . . that the reliance of the party seeking the benefit of estoppel must have been reasonable.").

We think that even if there were an equitable defense available, Ralph would not be entitled to invoke it because his reliance on Guardian to remind him of the December 28, 2000 payment deadline was unreasonable. Ralph missed four consecutive quarterly payments (and, in so doing, failed to tender a premium payment for more than a year) due to his claimed reliance on Guardian. Ralph's reliance was patently unreasonable, and therefore, he would not be

---

[17]Guardian had in fact sent Ralph notices of his premium payment deadlines for seven years.

[18]Guardian maintains that because Ralph did not respond in the district court to its argument that the policy terminated due to his failure to pay premiums, he has forfeited his right to advance his estoppel argument on appeal. We decline Guardian's invitation to rule on that ground.

entitled to benefit from an equitable remedy even if one were available.

Because the policy terminated according to its terms on March 28, 2001 due to a missed premium payment (regardless of whether Guardian sent suitable notice of the payment deadline), Ralph's claims, other than his estoppel claim, fail. And, because Ralph cannot show that his failure to pay the missed premium was reasonable, his estoppel claim likewise fails. The grant of Guardian's motion for summary judgment is affirmed.

B.      The Refusal to Transfer the Action Against Gaffney

We now address whether the district court erred in denying Ralph's motion to transfer the action against Gaffney from Maine to Massachusetts pursuant to 28 U.S.C. § 1631. We review a refusal to transfer for abuse of discretion. See Hill v. U.S. Air Force, 795 F.2d 1067, 1070 (D.C. Cir. 1986).

Section 1631 directs a district court to transfer a case in which there is "a want of jurisdiction, . . . if [transfer] is in the interest of justice." Here, the district court determined that transfer would not be in the interest of justice because it was granting Guardian's motion for summary judgement. The district court's determination would have been reasonable if Ralph's claims against Gaffney were entirely derivative of his claims against Guardian. But, we do not understand that to be the case; rather, we understand Ralph's claims against Gaffney to rest on independent

-11-

obligations that Gaffney owed to Ralph. For example, Ralph's claim that Gaffney "breached numerous duties of care" is premised in part on Gaffney's duty to inform Guardian of Ralph's new Maine address. Accordingly, we find that the district court erred in denying the motion to transfer on the ground given.

Nevertheless, it may be that there are other grounds on which to deny transfer, as urged on us by Gaffney. See Britell v. United States, 318 F.3d 70, 75 (1st Cir. 2003) ("[I]f an action . . . is fanciful or frivolous, it is in the interest of justice to dismiss it rather than to keep it on life support (with the inevitable result that the transferee court will pull the plug)."). The relevant claims were based on a conversation that Jean had with Gaffney late in the summer of 2000, more than three years before Ralph filed suit in the fall of 2003. Consequently, it appears that the common law claims against Gaffney are time-barred. See Mass. Gen. Laws ch. 260, § 2A ("Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues.").

Although the remaining claim, based on Mass. Gen. Laws ch. 93A, is not time-barred, see Mass. Gen. Laws ch. 260, § 5A ("Actions arising on account of violations of any law intended for the protection of consumers, including . . . chapter ninety-three A[,] . . . shall be commenced only within four years next after the

-12-

cause of action accrues."), it nonetheless is barred if Ralph failed to provide Gaffney with the pre-suit notice required by Mass. Gen. Laws ch. 93A, § 9(3).[19]  See, e.g., Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975) ("A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved.").  Although Ralph sent a letter that gave notice of his Mass. Gen. Laws ch. 93A claim to Guardian, it is not clear that he also sent a copy of that letter to Gaffney.

In light of the above, we vacate the denial of Gaffney's motion to transfer[20] and remand the action against Gaffney for the

_____

[19]According to Mass. Gen. Laws ch. 93A, § 9(3), "[a]t least thirty days prior to the filing of [a chapter 93A] action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."

[20]Gaffney argues that transfer of the claims against him would be improper under 28 U.S.C. § 1631 because that statute "directs a court to transfer an 'action' over which it lacks jurisdiction, rather than an individual claim."  Hill, 795 F.2d at 1070.  We decline the invitation to affirm the district court on this ground. Because the district court granted Guardian's motion for summary judgment, the claims asserted against Gaffney were the only claims that remained in the action.  Thus, even if the transfer statute prohibits the transfer of some but not all claims in an action (and we question whether it does), it would not prohibit transfer under the circumstances of this case.  Cf. United States v. County of Cook, 170 F.3d 1084, 1089 (Fed. Cir. 1999) (finding that Congress "inten[ded] . . . § 1631 to permit the transfer of less than all of the claims in an action").

district court to reconsider whether transfer is in the interest of justice.[21]

---

[21]We note that there is a debate over whether 28 U.S.C. § 1631 provides for transfers only where a federal court lacks subject matter jurisdiction, or whether it also applies where other types of jurisdiction are lacking, including personal jurisdiction. Compare Roman v. Ashcroft, 340 F.3d 314, 328 (6th Cir. 2003) (concluding that "§ 1631 . . . applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction."), and Renner v. Lanard Toys Ltd., 33 F.3d 277, 284 (3d Cir. 1994) (indicating that where personal jurisdiction is lacking, a court may consider a transfer pursuant to § 1631), and Ross v. Colo. Outward Bound Sch., Inc., 822 F.2d 1524, 1526-27 (10th Cir. 1987) (same), with Songbyrd, Inc. v. Estate of Grossman, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (noting that "the legislative history of section 1631 provides some reason to believe that this section authorizes transfers only to cure lack of subject matter jurisdiction"), and Pedzewick v. Foe, 963 F. Supp. 48, 50 (D. Mass. 1997) ("agree[ing] with the line of cases limiting section 1631 to transfer for lack of subject matter jurisdiction only"), and 15 Charles Alan Wright et al., Federal Practice and Procedure § 3842 (2d ed. 1986) ("[Section 1631] is concerned only with subject matter jurisdiction. It has nothing to do with personal jurisdiction or venue."). Those that construe § 1631 narrowly do so in reliance on the statute's legislative history, see, e.g., Pedzewick, 963 F. Supp. at 50 (noting that a Senate report issued when Congress enacted § 1631, S. Rep. No. 97-275, at 11 (1987), reprinted in 1982 U.S.C.C.A.N. 11, 21, 40, states in part that the statute "would authorize the court in which a case is improperly filed to transfer it to a court where subject matter jurisdiction is proper"), while those that read the statute expansively generally rely on its language and Congress' intent in passing it, see, e.g., Roman, 340 F.3d at 328 (observing that "[t]he language of § 1631 does not refer to any specific type of jurisdiction, only referring broadly to jurisdiction" and that "a broad construction of the statute is consistent with Congress's intent to protect a plaintiff against either additional expense or the expiration of a relevant statute of limitations in the event that the plaintiff makes an error in trying to select the proper court within the complex federal court system" (internal quotation marks omitted)). Although we are inclined to read § 1631 as allowing for transfers where a federal court lacks any type of jurisdiction (including personal jurisdiction), we need not definitely decide the issue today, as Gaffney did not defend the district court's denial of Ralph's

-14-

**The grant of Guardian's motion for summary judgment is affirmed; the denial of Gaffney's motion to transfer is vacated and the action against Gaffney is remanded for proceedings consistent with this opinion.**

---

motion to transfer by arguing that § 1631 does not permit transfer to cure defects in personal jurisdiction.  See Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 43 (1st Cir. 2003) ("Issues raised on appeal in a perfunctory manner (or not at all) are waived.").