# United States Court of Appeals
## For the First Circuit

No. 04-1127

THE NARRAGANSETT ELECTRIC COMPANY,

Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

COMMONWEALTH OF MASSACHUSETTS,

Intervenor.

ON PETITION FOR REVIEW OF AN ORDER
OF THE ENVIRONMENTAL PROTECTION AGENCY

Before

Boudin, <u>Chief Judge</u>,
Torruella and Lynch, <u>Circuit Judges</u>.

<u>Ernest Gellhorn</u>, <u>Garrett Rasmussen</u>, <u>Jeffrey Wertkin</u>, <u>Law Office of Ernest Gellhorn</u>, and <u>Patton Boggs LLP</u> on brief for petitioner.
<u>Laurel A. Bedig</u>, Environmental Defense Section, and <u>Thomas L. Sansonetti</u>, Assistant Attorney General, Environmental and Natural Resources Division, United States Department of Justice, on brief for respondent.
<u>William L. Pardee</u>, Assistant Attorney General, Environmental Protection Division, and <u>Thomas F. Reilly</u>, Attorney General, Commonwealth of Massachusetts, on brief for intervenor.

May 6, 2005

**LYNCH, Circuit Judge**. The litigation at issue here is an outgrowth of an earlier action appealed to this court, see Commonwealth of Mass. v. Blackstone Valley Elec. Co., 67 F.3d 981 (1st Cir. 1995), an environmental case in which we ordered a key question referred to the United States Environmental Protection Agency ("EPA") under the primary jurisdiction doctrine. Not liking the EPA's response, the successor to the defendant in the initial action filed suit directly in this court, asserting that the courts of appeals have original jurisdiction under 33 U.S.C. § 1369(b), which grants direct appellate review of certain actions under the Clean Water Act ("CWA"). Because we find that direct appellate review of the precise action here -- an interpretation of an already listed toxic pollutant in response to a primary jurisdiction referral -- is not within the scope of section 1369(b), we hold that we lack subject matter jurisdiction. Rather than dismissing the petition, we transfer it, for efficiency purposes, to the Federal District Court for the District of Massachusetts, thus consolidating it with the underlying environmental litigation that generated the primary jurisdiction referral. See 28 U.S.C. § 1631.

## I.

We briefly describe the facts, beginning with the underlying litigation. In 1987, the Commonwealth of Massachusetts sued Blackstone Valley Electric Company ("Blackstone"), the

-2-

corporate predecessor to Narragansett Electric Company ("Narragansett"), the plaintiff in this action, in federal district court for the District of Massachusetts to recover cleanup and response costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. See Blackstone Valley, 67 F.3d at 983-84. The cleanup costs were for excavation and removal of soil and wood chips contaminated with the compound ferric ferrocyanide ("FFC"). See id. The FFC was created as a waste byproduct of a coal-based gas manufacturing process employed by a gas facility that had been operated by Blackstone from 1920-1961. See id.

The Commonwealth's ability to recover its cleanup costs turned essentially on the question of whether FFC was a "hazardous substance" within the meaning of CERCLA. See id. at 984. CERCLA's definition of "hazardous substance" incorporated various lists of substances from other environmental statutes, including the list of "toxic pollutants" that the EPA Administrator was charged with promulgating under the CWA, 33 U.S.C. § 1317(a). See 42 U.S.C. § 9601(14)(D). FFC itself is not listed on any of the lists incorporated by CERCLA. However, the category "cyanides" is included on the CWA's list of toxic pollutants, as determined by the EPA Administrator. 40 C.F.R. § 401.15; see also 40 C.F.R. § 302.4 & tbl. 302.4 (incorporating this list into CERCLA).

The Commonwealth's argument in the initial litigation was that the term "cyanides" in the CWA list of toxic pollutants under 33 U.S.C. § 1317(a) included within it the compound FFC. The district court granted the Commonwealth partial summary judgment on the issue of whether FFC was a "hazardous substance" under CERCLA, holding that the term "cyanides," by its "plain meaning," included the cyanide compound FFC. See Commonwealth of Mass. v. Blackstone Valley Elec. Co., 777 F. Supp. 1036, 1038-39 (D. Mass. 1991).

On appeal, this court vacated the district court's grant of partial summary judgment on this issue. We held that there was no plain meaning whether the term "cyanides" included FFC, given conflicting expert affidavits on the scientific meaning of the term. Blackstone Valley, 67 F.3d at 986-87. We noted further that "[h]aving found . . . that EPA's regulatory framework does not adequately define the term, that the legislative and regulatory history of the term 'cyanides' does not establish the Commonwealth's position, and that the position advocated by amicus [the EPA] is not entitled to deference, we are left with virtually no legislative or administrative guidance for determining whether" the term "cyanides" includes FFC. Id. at 991-92. Thus, we ordered the question referred to the EPA under the primary jurisdiction doctrine. See id. at 992. Specifically, we remanded the case to the district court to refer to the EPA the question, for "administrative determination," of "whether FFC qualifies as one of

the 'cyanides' within the meaning of 40 C.F.R. § 401.15 and 40 C.F.R. § 302.4, Table 302.4." Id. at 993. The district court stayed its own proceedings pending this determination.

Eight years later, in 2003, the EPA finally answered the question in a "final administrative determination" ("FAD"), as follows: "ferric ferrocyanide . . . is one of the 'cyanides' within the meaning of the Toxic Pollutant List under the Clean Water Act." See 68 Fed. Reg. 57,690 (Oct. 6, 2003). In reaching this conclusion, the EPA undertook both a "legal review" and a "scientific review." In its legal review, the EPA considered the legislative history of the CWA's toxic pollutant provision, 33 U.S.C. § 1317(a), the statutory language of this provision, and its own history of implementing this provision. It acknowledged that none of these sources specifically addressed FFC or discussed the scope of the term "cyanides," but found that these three indicators showed that the listed pollutants under 33 U.S.C. § 1317(a) were "meant to be broad categories or families of compounds." Further, the EPA noted that the context of § 1317(a) made a broad reading of these listed toxic pollutants sensible: "Listing does not impose any regulatory requirements; rather it establishes how a listed pollutant may be regulated in effluent limitation guidelines and national pollutant discharge elimination system . . . permits."[1]

---

[1]In its legal analysis, the EPA emphasized 40 C.F.R. § 423, App. A, where the EPA promulgated a list of 126 "Priority Pollutants." The list included a reference to "Cyanide, Total,"

-5-

In its scientific review, the EPA stated that there was evidence that FFC can and has released free cyanide in the environment in ways that could be toxic to humans and aquatic organisms. "[C]omments from peer reviewers [and] non-EPA experts with specialized knowledge . . . were generally supportive of EPA's scientific analysis"; thus this scientific analysis "support[s]" the EPA's conclusion from its legal review that the term "cyanides" under 40 C.F.R. § 401.15 includes FFC.

Before promulgating its FAD, the EPA provided notice and opportunities for public comment, as well as a peer review of its proposed determination by scientists. See 60 Fed. Reg. at 57,691. The EPA stressed that in its view, because its FAD was not a

---

which the EPA stated was intended as a reference to a certain test, the total cyanide test, for measuring cyanide. The test is explained under 40 C.F.R. § 136.3, which establishes procedures for measuring pollutant discharges for permitting and certain other purposes. Cyanide is apparently detectable from FFC by using this total cyanide test. At least one other test would not detect cyanide in FFC, but the EPA found that 40 C.F.R. § 423's reference to the total cyanide test was useful in interpreting the EPA's toxic pollutant list at 40 C.F.R. § 401.15, and established that test as the appropriate test for measuring which compounds were included in the term "cyanides" on the toxic pollutant list. In Blackstone Valley, this court declined, despite EPA's suggestion in an amicus brief, to use the reference to the total cyanide test in 40 C.F.R. § 136.3 in order to itself interpret the listing of toxic pollutants under the CWA at 40 C.F.R. § 401.15. See 67 F.3d at 988-91. We expressed concern with the lack of any apparent link between the regulations at § 136.3 and the list at § 401.15, as well as the potential for the total cyanide test to lead to nonsensical classifications. See id. at 989-90. Since we transfer this case for lack of subject matter jurisdiction, we of course do not discuss the appropriateness of the EPA's use of the "Cyanide, Total" reference in this context.

"legislative rule," the agency did not need to provide a notice and comment period, but had provided one solely out of choice. See id. The EPA also emphasized its view that:

> EPA's [FAD] . . . clarifies the Agency's interpretation of the term 'cyanides' and does not impose new requirements. It does not mean that [FFC] is a newly added pollutant to the toxic pollutant list under [33 U.S.C. 1317(a)]. The FAD is not a regulation nor does it change existing regulations under the CWA or CERCLA.

Unhappy with the EPA's FAD, which obviously meant it was more vulnerable to having to pay CERCLA clean-up costs to the Commonwealth, Narragansett (the corporate successor to Blackstone) filed a petition for review under 33 U.S.C. § 1369(b) of the EPA's FAD in this court, on January 22, 2004.

Before us, Narragansett seeks a determination that the EPA's FAD constituted a "legislative rule" adopted without complying with the strictures of the Administrative Procedure Act ("APA"), and thus is void. Meanwhile, the Federal District Court for the District of Massachusetts continues to have jurisdiction over the initial, underlying case in which the Commonwealth sued Narragansett for cleanup costs, because it was the court that originally referred the question to the EPA under the primary jurisdiction doctrine. As best we can tell, no substantive action has taken place in that court due to the pendency of this action.

The EPA has sought to dismiss the court of appeals review petition for lack of subject matter jurisdiction, arguing that we

do not have original jurisdiction over this action under 33 U.S.C. § 1369(b) and that any jurisdiction is instead vested in the district court under the general provisions of the APA. Narragansett opposes this motion. The Commonwealth has intervened and, while taking no position on the jurisdiction question in the court of appeals, argues that if we find that we have no jurisdiction over this case, we ought to transfer the action to the district court hearing the initial case between the Commonwealth and Narragansett, rather than dismissing it entirely, so as to facilitate efficient resolution of the underlying CERCLA claim. Narragansett opposes this as well.

## II.

The relevant jurisdictional provision at issue, 33 U.S.C. § 1369(b), provides for direct federal court of appeals review of certain actions of the EPA Administrator under the CWA.[2] Among the

---

[2]The statute reads as follows:
Review of the Administrator's action (A) in promulgating any standard of performance under [33 U.S.C. § 1316], (B) in making any determination pursuant to [33 U.S.C. 1316(b)(1)(C)], (C) in promulgating any effluent standard, prohibition, or pretreatment standard under [33 U.S.C. § 1317], (D) in making any determination as to a State permit program submitted under [33 U.S.C. § 1342(b)], (E) in approving or promulgating any effluent limitation or other limitation under [33 U.S.C. §§ 1311, 1312, 1316, or 1345], (F) in issuing or denying any permit under [33 U.S.C. § 1342], and (G) in promulgating any individual control strategy under [33 U.S.C. § 1314(l)], may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business . . . ."

-8-

EPA Administrator's actions under the CWA which are directly reviewable in the courts of appeals are the promulgation of "any effluent standard, prohibition, or pretreatment standard under [33 U.S.C. § 1317]." 33 U.S.C. § 1369(b)(1)(C).[3]

Direct appellate review in the courts of appeals under section 1369 carries with it "a peculiar sting" for potential challengers: any agency action reviewable under its provisions must be challenged within 120 days, unless based on new "grounds" arising after the expiration of that time frame, and cannot thereafter be challenged in any "civil or criminal proceeding for enforcement." 33 U.S.C. § 1369(b); see Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1313 (9th Cir. 1992); Am. Paper Inst., Inc. v. EPA, 882 F.2d 287, 288-89 (7th Cir. 1989). The short time

_____

33 U.S.C. § 1369(b)(1).

[3]We quickly deal with one issue. One might think that when a primary jurisdiction referral originates in a certain district court, any challenge to the fruits of that referral by a party to the underlying litigation must be in that same court, and the challenger is precluded from bringing a challenge in some other court. This, though, is not the law. See, e.g., Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 68-69 (1970) (where statute gives court of appeals exclusive jurisdiction over an agency action, district court which referred question to agency under primary jurisdiction question properly held that it lacked jurisdiction to review the answer to that question); Ass'n of Int'l Automobile Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot., 196 F.3d 302, 304 (1st Cir. 1999) (noting that judicial review of question referred for primary jurisdiction can occur in a different court); see also 28 U.S.C. § 1336(b) (imposing special statutory requirement that court referring a question to Surface Transportation Board under primary jurisdiction doctrine has exclusive jurisdiction over response).

frame in § 1369(b) clearly reflects some effort to protect the EPA's interests in finality in certain matters, particularly certain rulemakings with substantial significance and scope. By contrast, the standard statute of limitations for APA actions is six years. See Trafalgar Capital Assocs., Inc. v. Cuomo, 159 F.3d 21, 34 (1st Cir. 1998). Further, we note the obvious proposition, stated by various courts, that since some but not all of the actions that the EPA can take under the CWA are listed with considerable specificity in section 1369(b), not all EPA actions taken under the CWA are directly reviewable in the courts of appeals. See, e.g., Friends of the Earth v. EPA, 333 F.3d 184, 189-90 (D.C. Cir. 2003); Bethlehem Steel Corp. v. EPA, 538 F.2d 513, 518 (2d Cir. 1976).

Narragansett acknowledges, as it must, that the FAD issued by the EPA in this case is not specifically set forth in section 1369(b). Nonetheless, it argues that we have original jurisdiction under section 1369(b)(1)(C), which gives this court original jurisdiction to hear challenges to the EPA's promulgation of any effluent standard or prohibition promulgated under 33 U.S.C. § 1317. See 33 U.S.C. § 1369(b)(1)(C). It is clear that the FAD itself did not promulgate any effluent standard or prohibition. Effluent standards and prohibitions are quantity limits or prohibitions of discharges of toxic pollutants that apply to all

industries and types of point sources. See 40 C.F.R. § 129.2; 33 U.S.C. § 1362(11).

However, Narragansett contends that even though the EPA labeled its own action as merely an interpretation of an existing listing of the category "cyanides," the EPA's action should be considered as equivalent to a "listing" of FFC as a "toxic pollutant" under 33 U.S.C. § 1317(a)(1). Further, Narragansett argues that because a listing of a compound as a toxic pollutant under section 1317(a)(1) is a precondition for the promulgation of effluent standards or prohibitions dealing with the listed substance under section 1317(a)(2), and is so intertwined with such a promulgation, the listing itself must be directly reviewable in the courts of appeals under 33 U.S.C. § 1369(b)(1)(C). Narragansett cites Natural Resources Defense Council, Inc. v. Train, 519 F.2d 287, 290-91 (D.C. Cir. 1975), for this latter proposition,[4] and also notes that the statutory factors that the EPA should consider when promulgating a "listing" are virtually

_____

[4]Natural Resources held that the challenge at issue before it, which went to the exclusion of certain pollutants from the toxic pollutant list, was not intertwined with the promulgation of any effluent standards, and thus jurisdiction lay in the district court under general provisions of the APA, and not in the appeals court under section 1369. 519 F.2d at 291. However, Natural Resources stated, in dicta, that "when the Administrator has listed a substance and thereafter promulgated standards or prohibitions for that substance the listing and the promulgation of standards are interwoven; any challenge to the Administrator's action must then be in a court of appeals under section [1369]." Id. at 290-91. That is not this case, since here no effluent standards have yet been promulgated dealing with cyanides or FFC.

-11-

identical to those used when subsequently considering an effluent standard or prohibition for that listed substance. See 33 U.S.C. § 1317(a)(1), (2). From a policy perspective, Narragansett notes the potential for irrational bifurcated review if a company, seeking to challenge both specific effluent standards dealing with a toxic pollutant and the underlying listing of that substance as a toxic pollutant, were forced to file in two different courts to make those challenges.

The EPA counters that a listing is not so intertwined with a subsequent effluent standard or prohibition as to require initial review in the courts of appeals. It notes that Natural Resources predates revisions to section 1317 that loosened the relationship between listings and effluent standards. See 33 U.S.C. § 1317, Historical and Statutory Notes. As well, it notes that the EPA need not automatically subject a substance to effluent standards or prohibitions merely because it has been listed as a toxic pollutant; in fact, the EPA has only promulgated effluent standards for a few listed toxic pollutants under section 1317, and no effluent standards or prohibitions have been promulgated for cyanides or FFC. See 40 C.F.R. § 129.4 (listing effluent standards for only six toxic pollutants).

We have no need to enter into this fray. We do not here discuss the issue of when, if ever, a listing of a substance as a "toxic pollutant" under section 1317(a) might be directly reviewed

-12-

in the court of appeals under section 1369(b).[5] Nor must we decide whether an EPA action labeled an "interpretation" of an existing listing can ever be considered the equivalent of a "listing" for any purpose. Our grounds of decision in this case are narrower: we hold only that, as the EPA argues in the alternative, the FAD issued by the EPA in this case was not equivalent to a "listing" under section 1317(a).

Before listing a substance as a toxic pollutant under the CWA, the EPA is statutorily charged with considering the following factors: the "toxicity of the pollutant, its persistence, degradability, the usual or potential presence of the affected organisms in any waters, the importance of the affected organisms, and the nature and extent of the effect of the toxic pollutant on such organisms." 33 U.S.C. § 1317(a)(1). In contrast, the question the district court referred to the EPA under the primary jurisdiction doctrine, and which was answered by the EPA, asked "whether FFC qualifies as one of the 'cyanides' within the meaning of 40 C.F.R. § 401.15 and 40 C.F.R. § 302.4, Table 302.4." Blackstone Valley, 67 F.3d at 993. The inquiry undertaken by the

---

[5]We do note, though, that the challenge Narragansett raises to this FAD has nothing to do with the promulgation of future effluent standards or prohibitions dealing with FFC or other cyanides. It challenges the EPA's determination that FFC was already included on the list of toxic pollutants for its own sake, as the mere act of listing a substance as a toxic pollutant under 33 U.S.C. § 1317(a) leads to potential liability under CERCLA, and avoiding CERCLA liability is the purpose of Narragansett's suit.

-13-

EPA in order to answer this question emphasized legal considerations, particularly the legislative history, statutory language, statutory context, and a review of the various regulations the EPA has promulgated under the CWA. Scientific considerations were used only to "support" this analysis, and the EPA's scientific review did not include a consideration of the statutory factors in section 1317(a). It considered only whether cyanide might escape from FFC.

Further, we note that procedurally, it seems clear that a normal listing of a substance as a toxic pollutant under section 1317(a) is a rule making, and the various procedural requirements of a rule making, including a notice and comment period, will apply. See 5 U.S.C. § 553. It is more doubtful that the sort of agency action at issue in this case -- a FAD in response to a primary jurisdiction referral about the meaning of a regulation -- constitutes a rule making, and so it may be that various procedural requirements for a listing, including a notice and comment period, do not apply as of right, although the EPA chose to provide some of those procedures here. This is an issue that goes, as well, to the merits of Narragansett's case against the EPA.

To salvage its argument that this FAD promulgated by the EPA is a listing, and the listing in turn should be directly reviewable under section 1369(b) by the courts of appeals, Narragansett points to Crown Simpson Pulp Co. v. Costle, 445 U.S.

-14-

193 (1980).  Crown Simpson offers no support.  It held merely that the EPA's decision to veto a state-issued permit under the CWA was directly reviewable by the courts of appeals under section 1369(b)(1)(F), which gave the appellate courts jurisdiction over the EPA's actions in "issuing or denying any permit" under a certain CWA provision, because the "precise effect of [the EPA's] action [was] to 'deny' a permit," and its action was "functionally similar" to a direct denial of an EPA permit.  See id. at 196.  Here, as stated above, the FAD issued by the EPA has a different effect than, and is not functionally similar to, a listing (to not even speak of an "effluent standard," the actual statutory language at issue).[6]

Since the FAD issued by the EPA here is not functionally equivalent to a listing, Narragansett's argument necessarily fails. The interrelationship between the FAD and an "effluent standard" cannot be sufficient to establish jurisdiction under 33 U.S.C. §

----

[6]Narragansett also relies on Modine Manufacturing Corp. v. Kay, 791 F.2d 267 (3d Cir. 1986), which held that within the context of that case, an EPA interpretation of a "pretreatment standard" to apply it to a certain type of industrial process was reviewable under section 1369(b) just as the EPA's promulgation of a pretreatment standard itself would be.  While we do not necessarily agree with the result in Modine, which reflected a "liberal" interpretation of section 1369, see id. at 269-70, that has not been followed in other cases, we find Modine easily distinguishable for several reasons.  The interpretation in that case was not conducted pursuant to a very limited referral under the primary jurisdiction doctrine, but instead was performed pursuant to certain formalized agency procedures.  Further, the "interpretation" here is of a listing, not of an effluent standard; thus the interpretation is an additional step removed from an action named as reviewable in the statutory text.

1369(b)(1)(C). Narragansett makes no arguments under any of the other clauses in section 1369(b). Thus, we lack original jurisdiction to hear this petition. Original jurisdiction over this petition would seem to lie in the district court under the APA. Arguments such as whether the FAD was a final agency action reviewable under the APA, see 5 U.S.C. § 704, should be addressed by the district court.

The Commonwealth, as an intervenor, asks that we not dismiss this petition, thus allowing it to be refiled in any district court, but rather that we transfer the petition, construed as an APA petition, to the district court currently hearing the initial, underlying litigation between the Commonwealth and Narragansett. The Commonwealth argues that this will allow both cases to be determined at the same time, preventing undue delay of the underlying action, which began in 1987. 28 U.S.C. § 1631 allows us to transfer a case over which we lack jurisdiction to any other court where the action originally could have been brought, so long as such a transfer is in the "interest of justice." See Britell v. United States, 318 F.3d 70, 73-74 (1st Cir. 2003).

Transfer here is plainly in the interest of justice: Narragansett has made no argument that it will be harmed by the transfer or would prefer a different forum for any reason. Further, a District of Massachusetts forum coincides well with Narragansett's filing of this petition with the First Circuit. Both the

-16-

Commonwealth's interests and interests in "judicial administration" -- which is a factor in the section 1631 analysis, see id. at 75 -- counsel very strongly in favor of a transfer. Narragansett argues that section 1631 is intended solely to protect the interests of the filing plaintiff and thus transfer cannot be granted over the filing party's objections. Such a narrow read of the statute is inconsistent with its language, with Britell, and with the fact that a court can sua sponte order a transfer even absent a motion from either party, see, e.g., Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999), and we do not adopt it. We will grant the transfer here.

If and when the district court does resolve the FFC issue in light of the FAD, any party remains free to request review immediately in this court under the certification procedure if there is a basis for believing that immediate review would be appropriate. We are not endorsing such a course but merely noting its existence.

## III.

We hold that we lack jurisdiction over this petition under 33 U.S.C. § 1369(b). The Commonwealth's motion to transfer is granted, and this case is hereby **transferred** to the United States District Court for the District of Massachusetts. The Clerk of this court is directed to take the necessary steps to effectuate the transfer. No costs are awarded.